**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, Petitioner,**

v.

**OGLEBAY NORTON CO., Respondent.**

No. 88–3512.

United States Court of Appeals, Sixth Circuit.

Argued April 21, 1989.

Decided June 23, 1989.

Rehearing and Rehearing En Banc Denied Aug. 8, 1989.

---

Rae Ellen, Frank James, Anne P. Fugett (argued), U.S. Dept. of Labor, Office of the Sol., Washington, D.C., for Director, Office of Workers' Compensation Programs, U.S. Dept. of Labor.

John G. Paleudis (argued), Hanlon, Duff & Paleudis, St. Clairsville, Ohio, for Oglebay Norton Co.

Clifford M. Farrell, Virginia K. Mayle, Barkan & Neff, Columbus, Ohio, for Enid Goddard, Widow of Carl Goddard.

Before WELLFORD and GUY, Circuit Judges, and BROWN, Senior Circuit Judge.

BAILEY BROWN, Senior Circuit Judge.

The Director appeals the dismissal by the Administrative Law Judge (ALJ) and the subsequent affirmance of this dismissal by the Benefits Review Board of Oglebay Norton Co. (Oglebay) as the responsible operator in this black lung widows' benefits case. We believe that the ALJ improperly concluded (1) that Oglebay should be dismissed as the responsible operator and (2) that liability should be transferred to the Black Lung Disability Trust Fund. Accordingly, we reverse the ALJ's finding.

## FACTS

Carl Goddard filed an application for black lung disability benefits on July 20, 1973. Along with his application, Goddard filed a history of coal mine employment in which he stated that the most recent coal company he had worked for was the Youghiogheny and Ohio Coal Company (Y & O), from October 18, 1972 to July 31, 1973. Goddard also stated that he had been employed by Oglebay from February 21, 1955 to August 23, 1972.

After initial denials on September 12, 1973, June 3, 1974, February 24, 1976, and August 17, 1977, the Office of Workers' Compensation Programs (OWCP) issued a finding of eligibility on July 20, 1979 naming Y & O as the responsible operator and ordered benefits payable from January 1, 1974. On August 9, 1979, Y & O contested this finding of entitlement and disputed its identification as the responsible operator. 20 C.F.R. § 725.493(a)(1) defines a responsible operator as "the operator or other employer with which the miner had the most recent periods of cumulative employment of *not less than 1 year....*" (emphasis added). Goddard had been employed by Y & O for only ten months and the parties stipulated to this fact at an informal conference on March 27, 1980. Nevertheless, the OWCP forwarded Goddard's claim to the Office of Administrative Law Judges on July 8, 1980 with Y & O named as the responsible operator.

On April 30, 1981, Carl Goddard died and on May 30, 1981, his widow, Enid, filed a separate claim for benefits as a surviving spouse.

A hearing on the claim was scheduled for October 5, 1981. On September 12, 1981, Y & O filed a motion for summary judgment on the ground that by law it could not be the responsible operator since it had employed Goddard for less than one year. The Director also moved to remand the claim to the OWCP to identify the proper responsible operator. On September 25, 1981, the ALJ ordered remand of the claim to the deputy commissioner to identify the responsible operator.

On May 17, 1983, Oglebay was informed that it had been identified as the responsible operator. Oglebay was also informed of Y & O's prior involvement in the claim. Oglebay contested liability and moved that it be dismissed as the responsible operator and that liability be transferred to the Black Lung Disability Trust Fund. Oglebay also produced the evidence it had developed in defense of Goddard's claim. On March 23, 1983, the OWCP denied Oglebay's motion to transfer liability to the Trust Fund and ruled that the additional evidence produced by Oglebay did not alter the initial finding of disability.

The OWCP transferred the claim to the Office of Administrative Law Judges on July 26, 1983. Oglebay again filed a motion to be dismissed as the responsible operator and to transfer liability to the Trust Fund, citing *Crabtree v. Bethlehem Steel Corp.*, 7 BLR 1–354 (1984), as authority. Enid Goddard joined in this motion. On December 26, 1985, the ALJ dismissed Oglebay as the responsible operator pursuant to *Crabtree*. Noting the inefficiency of the OWCP in processing Goddard's claim, the ALJ transferred liability for Goddard's disability payments to the Black Lung Disability Trust Fund. This decision was affirmed by the Benefits Review Board on March 19, 1988, on the authority of its *Crabtree* decision. The Director now appeals to this court.

## ANALYSIS

The Director contends that the deputy commissioner's identification of Oglebay as the responsible operator was proper under 20 C.F.R. § 725.412(a). Additionally, the Director argues that the ALJ improperly transferred liability to the Black Lung Disability Trust Fund.

### Applicability of 20 C.F.R. § 725.412(a) [1]

The regulations contained at 20 C.F.R. § 725.412 govern the identification of a responsible operator by the deputy commissioner. 20 C.F.R. § 725.412(a) provides, in part:

> At any time during the processing of a claim under this part, after sufficient evidence has been made available to the deputy commissioner, the deputy commissioner may identify a coal miner operator ... which may be liable for the payment of the claim in accordance with the criteria contained in Subpart F of this part.[2] Such identification shall be made as soon after the filing of the claim as the evidence obtained permits....

In support of the decisions below, Oglebay suggests a narrow construction of § 725.412(a), stressing the language that "identification shall be made as soon after the filing of the claim as the evidence obtained permits." This language, Oglebay asserts, mandates identification of a responsible operator within a reasonable time after the information necessary to make an identification becomes available to the deputy commissioner. Since identification was

---

1. The ALJ's decision in this case did not directly address 20 C.F.R. § 725.412(a). His decision and the Board's decision below relied on *Crabtree* which addressed § 725.412(d). 20 C.F.R. § 725.412(d) does not apply here because this claim did not involve "a dispute between two or more operators as to which may be liable for the payment of benefits to the claimant...." 20 C.F.R. § 725.412(d).

2. Subpart F, 20 C.F.R. §§ 725.490–725.497, "define[s] the term 'operator,' prescribe[s] the manner in which the identity of an operator which may be liable for the payment of benefits—referred to as a 'responsible operator'—will be determined, and briefly describe[s] the obligations of operators to secure the payment of benefits." 20 C.F.R. § 725.490(b).

not made a reasonable time after such information was made available in this case, Oglebay contends that the deputy commissioner's identification of Oglebay as the responsible operator was invalid.

We decline to follow Oglebay's construction of § 725.412(a) for two reasons. First, Oglebay's emphasis on the second sentence of subsection (a) appears to be at odds with the language of the first sentence which permits identification of a responsible operator "[a]t any time during the processing of a claim under this part." [3] *See American Tobacco Co. v. Patterson*, 456 U.S. 63, 71, 102 S.Ct. 1534, 1538, 71 L.Ed.2d 748 (1982) ("Statutes should be interpreted to avoid untenable distinctions and unreasonable results whenever possible."); *Payne v. Panama Canal Co.*, 607 F.2d 155, 164 (5th Cir.1979) ("Every statute must be viewed in its entirety so that each part has a sensible and intelligent effect harmonious with the whole."). We believe that a harmonious construction of 20 C.F.R. § 725.412(a) allows the identification of Oglebay as the responsible operator. Although this identification was made nearly ten years after Goddard's claim was filed, the claim had not, at that time, been finally adjudicated. Therefore, it was still being processed when the identification of Oglebay was made and § 725.412(a) was not violated.

Additionally, we believe it is inappropriate for this court to read a time limitation into 20 C.F.R. § 725.412(a), as Oglebay suggests. Such a reading would inject a degree of uncertainty into future responsible operator identifications, requiring the ALJ to determine whether identification in each case was made within a reasonable time of filing and "to deal with each [identification] on an ad hoc basis in which multifarious, indeed unlimited, factors would need to be considered and weighed."

*Conn v. United States*, 867 F.2d 916, 921 (6th Cir.1989). If the need for a time limitation becomes great, it is properly within the authority of the Department of Labor to amend the regulation to remedy such a deficiency. 30 U.S.C. § 932(a).

### Validity of *Crabtree v. Bethlehem Steel Corp.*

Both the ALJ and the Board in this case rested their decisions ordering the dismissal of Oglebay as the responsible operator on the Board's prior decision in *Crabtree v. Bethlehem Steel Corp.*, 7 BLR 1–354 (1984). The Board in *Crabtree* dismissed Bethlehem as the responsible operator, finding that Crabtree had been an independent contractor. The Board then determined that a further remand to determine a responsible operator was not warranted.

> The Department of Labor is not entitled to a second opportunity to identify another putative responsible operator.
>
> ... The regulations contain no express provision requiring the Department to identify all putative responsible operators, and resolve any dispute as to which one is properly responsible for benefits, in one proceeding. We hold, however, that due process, as well as the efficient administration of the Act, compels this result.
>
> Remand for reconsideration of the operator issue would be tantamount to relitigating the claim.... [Such p]iecemeal litigation obviously is not compatible with the efficient administration of the Act and expeditious processing of claims.

*Id.* at 1–356 to 1–357 (footnotes omitted). The *Crabtree* Board then held that, "in the absence of any other potentially liable operator", the Black Lung Disability Trust

---

**3.** Oglebay contends that this language pertains only to the processing of a claim under subpart D, which, it argues, applies only to the administration of a claim by the deputy commissioner. If § 725.412(a) were meant to address only subpart D, however, that subpart would have been specifically identified, instead of the reference to "this part". The part containing § 725.412 is Part 725 which governs the processing of claims

under Part C of Title IV of the Federal Mining Safety and Health Act. Furthermore, subpart D does not pertain only to the processing of claims by the deputy commissioner. Subpart D addresses the adjudication of claims by adjudication officers which include administrative law judges as well as the deputy commissioner. 20 C.F.R. § 725.350.

Fund[4] must assume liability for the payment of benefits to the claimant. *Id.*

In this case, the ALJ, applying *Crabtree,* dismissed Oglebay as the responsible operator and transferred liability to the Trust Fund. "The error which set in motion the fragmentation and intolerable delay of this litigation was so patent and so unnecessary that it is only just that the Department of Labor [i.e., the Trust Fund] bear responsibility for it." Joint Appendix at A–19.

We are not obligated to follow the Benefits Review Board's decision in *Crabtree.* The Board is not a policymaking agency and its interpretations of the Black Lung Benefits Act are not entitled to "any special deference from the courts." *Potomac Elec. Power Co. v. Director, OWCP,* 449 U.S. 268, 278 n. 18, 101 S.Ct. 509, 514 n. 18, 66 L.Ed.2d 446 (1980); *Saginaw Mining Co. v. Mazzulli,* 818 F.2d 1278, 1283 (6th Cir.1987). "Rather, the Director's statutory interpretation is the one entitled to judicial deference, since he is the one charged with administration of the BLBA." *Saginaw Mining,* 818 F.2d at 1283.

We decline to follow the Board's ruling in *Crabtree* that the deputy commissioner must identify all responsible operators in one proceeding and that when such identification procedures are not efficiently administered, liability should be directed to the Black Lung Disability Trust Fund. The assignment of liability to the Trust Fund in this case and in *Crabtree* appears to be contrary to Congress' intent that the fund be utilized when no responsible operator is identified. 26 U.S.C. § 9501(d), addressing the assignment of liability to the Black Lung Disability Trust Fund, provides in pertinent part:

> Amounts in the Black Lung Disability Trust Fund shall be available, as provided by the appropriation Acts, for—

(1) the payment of benefits under section 422 of the Black Lung Benefits Act in any case in which the Secretary of Labor determines that—

.    .    .    .    .

(B) there is no operator who is liable for the payment of such benefits....

*See also Old Ben Coal Co. v. Luker,* 826 F.2d 688, 693 (7th Cir.1987) ("Congress intended to 'ensure that individual coal operators rather than the trust fund bear the liability for claims arising out of such operators' mines to the maximum extent feasible.' S.Rep.No. 209, 95th Cong., 1st Sess. 9 (1977), *reprinted in* House Comm. on Educ. and Labor, 96th Cong., Black Lung Benefits Reform Act and Black Lung Benefits Revenue Act of 1977, 612 (Comm.Print 1979).").

■ In this case, since there was an affirmative identification of Oglebay as the responsible operator, the ALJ's transfer of liability to the Trust Fund was improper. There is nothing in the applicable statutes or regulations to indicate that Oglebay's identification as responsible operator should be disregarded merely because it was inefficiently reached. Moreover, it should be noted that none of the parties to this case would suffer substantial prejudice by a further remand of this action with Oglebay properly identified as the responsible operator. After the initial determination of Goddard's eligibility for disability benefits, interim benefits were paid to him by the Black Lung Disability Trust Fund. 20 C.F.R. §§ 725.420 and 725.522. After his death, Goddard's widow was also granted interim benefits. Additionally, Oglebay would not be substantially prejudiced by remand. Oglebay has access to the medical evidence developed by Y & O both before and after Goddard's death and can adequately defend against the claim on remand. In fact, the ALJ noted that Y & O

---

**4.** The Black Lung Disability Trust Fund was established by the Black Lung Benefits Revenue Act of 1977 "to provide a more effective means of transferring the responsibility for the payment of benefits from the Federal government to the coal industry...." 20 C.F.R. § 725.490(a). The fund is financed by an excise tax on the sale of coal. 26 U.S.C. § 9501; *Old*

*Ben Coal Co. v. Luker,* 826 F.2d 688, 693 (7th Cir.1987). The fund is authorized to borrow from the United States Treasury "as may from time to time be necessary". 26 U.S.C. § 9501(c)(1). The Director notes that currently the Trust Fund is $2.9 billion in debt to the Treasury. Brief for Director, Office of Workers' Compensation Programs at 14.

had "generate[d] considerable evidence in its defense, including a complete physical examination." Joint Appendix at A–14. In addition, it appears that Oglebay also had developed evidence on the issue of whether Goddard in fact had black lung disease. Therefore, we are not presented with a case in which it appears that Oglebay will be substantially prejudiced in defending this matter on its merits. Indeed, neither the ALJ nor the Benefits Review Board, in refusing to hold Oglebay to be the responsible operator and in transferring this liability to the Trust Fund, relied on such prejudice to Oglebay.

We therefore hold that the deputy commissioner's identification of Oglebay as the responsible operator in this case was within his authority under 20 C.F.R. § 725.412(a) and that the ALJ's dismissal of Oglebay and the transfer of liability to the Black Lung Disability Trust Fund were in error.

In making this decision, we are certainly not placing our imprimatur on the way in which this matter was handled in the Director's office. On the contrary, we agree with Oglebay, as the Director at least implicitly concedes, that the failure of the Director's office earlier to identify the responsible operator represents a clear case of bureaucratic snafu. We simply hold that, under these circumstances and under the applicable statute and regulations, the Director was not prohibited from naming Oglebay as the responsible operator.

Accordingly, we reverse the decision of the ALJ and remand for further proceedings consistent with this opinion.

RALPH B. GUY, Jr., Circuit Judge, concurring.

Although I concur in this opinion, I write separately only to convey my view that our resolution does not violate the Benefits Review Board's concerns expressed in *Crabtree v. Bethlehem Steel Corp.*, 7 B.L.R. 1–354 (1984). In *Crabtree*, the Board reversed an ALJ's finding that Bethlehem Steel was the responsible operator and refused to remand the case to redetermine the identity of the true responsible employer. Consequently, the Board transferred liability to the Black Lung Disability Trust Fund after finding that due process and the efficient administration of the Act require that "the Department ... resolve the operator issue in a preliminary proceeding, and/or proceed against all putative responsible operators at every state of the claims adjudication." 7 B.L.R. at 1–357 (citation omitted).

It seems to me that the ALJ and Board erred in finding *Crabtree* outcome determinative in this case. In its election not to remand for reconsideration of the operator issue, the *Crabtree* Board expressed the following two concerns:

First, a claimant who has established entitlement in the first round of proceedings may lose his award in a later round against another operator. A first finding of entitlement, even though fully developed and litigated, can be defeated in subsequent proceedings by a different operator, and not always on the merits. Second, piecemeal litigation obviously is not compatible with the efficient administration of the Act and expeditious processing of claims.

7 B.L.R. at 1–357.

In *Crabtree*, the case had been fully litigated on the merits before it was determined that the claimant was an independent contractor *vis-a-vis* the named employer, thereby insulating that employer from liability as the responsible operator. In contrast, in the instant case there was not so much as a hearing involving the initially named responsible employer (Y & O).

Although Goddard received a "Notice of Initial Finding" of entitlement to benefits, that initial finding was not a "fully developed and litigated" finding of entitlement. Rather, it was an initial administrative determination made by a Department of Labor claims examiner. That initial determination sets in motion the procedural machinery for claims adjudication, which permits entitlement to be contested and fully litigated before an ALJ. Although, in contesting its liability for benefit payments, Y & O submitted medical evidence refuting claimant's entitlement and sought a hearing on both this issue and on its designa-

tion as the responsible operator, the issue of entitlement was never fully developed or litigated before an ALJ. Instead, without more, the matter was disposed of on summary judgment dismissing Y & O as the responsible operator. Hence, because the claimant never had to defend the initial entitlement determination against Y & O, I find no due process rights implicated or other injustice in exposing the claimant to the possibility of having to defend the initial determination against Oglebay. Likewise, as noted in the majority opinion, Oglebay has access to evidence developed by others before and after Goddard's death, as well as its own developed evidence with which to defend against the claim on remand.

Moreover, I view the Board's concern in *Crabtree* about piecemeal litigation and efficient administration of the Act as intrinsically tied to the Board's desire to avoid the inconvenience and delay inherent in relitigation of claims. In fact, in concluding that the operator issue must be resolved in a preliminary proceeding and/or a proceeding against all putative responsible operators at each stage of processing the claim, the Board noted that "[even a separate preliminary proceeding on the operator issue alone is more desirable than *fully litigating the claim against each operator individually*]." 7 B.L.R. at 1–357 (emphasis added). Here, the claim was never fully litigated against anyone by anyone. Thus, the prospect of relitigation that the Board found repugnant in *Crabtree* is absent here.

Accordingly, I concur in the reversal of the Board's decision and find that such resolution is neither inconsistent with nor contraindicated by the concerns expressed in *Crabtree*.

WELLFORD, Circuit Judge, dissenting.

I dissent from the majority's decision that the deputy commissioner's long and egregious delay in naming Oglebay Norton as the responsible operator is permitted by the applicable regulations. 20 C.F.R. § 725.412(a) provides, in part:

At any time during the processing of a claim under this part, after sufficient evidence has been made available to the deputy commissioner, the deputy commissioner may identify a coal miner operator ... which may be liable for the payment of the claim in accordance with the criteria contained in Subpart F of this part. Such identification shall be made as soon after the filing of the claim as the evidence obtained permits....

The majority interprets this passage as giving the deputy commissioner unfettered discretion to name a responsible operator at any time, virtually without limitation.

I do not believe this is a reasonable interpretation of 725.412(a). In my view, it is not logical to construe the phrase "[a]t any time during the processing of a claim" as does the majority opinion. The remainder of that sentence and the sentence following plainly convey that the deputy commissioner identify the responsible operator as soon as the available evidence would reasonably permit. The regulation, taken as a whole, simply recognizes that the evidence needed to make the correct identification could take some time to accumulate. The deputy commissioner is not required to designate a responsible party immediately upon the filing of a claim but may wait until all of the needed evidence has been presented, and this might occur "at any time" during the claim's processing.

The second sentence of the quoted regulation commands that "[s]uch identification *shall be made* as soon after the filing of the claim as the evidence obtained permits...." (emphasis added). The majority opinion contends that the plain meaning of this sentence "appears to be at odds with the language of the first sentence." As a result, the majority chooses to read the second sentence completely out of the regulation for all practical purposes. The imperative contained in the second sentence should be read in combination with the first; obviously it was not intended to have no meaning at all. The majority opinion seems to violate the very rule on which it purports to rely: "[e]very statute must be viewed in its entirety so that each part has

a sensible and intelligent effect harmonious with the whole." *Payne v. Panama Canal Co.*, 607 F.2d 155, 164 (5th Cir.1979). Clearly, any "harmonious construction" of the regulation would give the second sentence "a sensible and intelligent effect." I would read § 725.412(a) to command that the deputy commissioner designate a responsible operator as soon as the evidence reasonably permits him to do so.

Statutory interpretation problems aside, the message sent out by the majority opinion is to encourage sloppy and unreasonable administration of the Act by government officials charged with its enforcement to the potential detriment of responsible operators. There is no dispute that the deputy commissioner had the necessary evidence to name Oglebay Norton as the responsible operator almost a decade before it was so designated. This inexplicable and unexplained delay not only evidences careless administration, but also may well cause unfair prejudice to the operator. By the time Oglebay Norton was designated, the coal miner whose claim was to be adjudicated had already died. There was therefore no further opportunity to conduct its own discovery and medical examination of the miner. In addition, other potential witnesses may have died or otherwise become unavailable in the ten years that have passed since the deputy commissioner was originally given notice to name Oglebay Norton as the responsible operator. The result reached may also present a due process question in light of the affirmative mandate of § 725.412(a), which has been ignored by the director. At the very least, Oglebay Norton deserves a fair opportunity to demonstrate through an evidentiary hearing the potential prejudice resulting from this long delay before it is called upon to respond for substantial liability.

The fact that the trust fund may, or may not, have adequate reserves or funding should not be deemed a pertinent factor in this decision. I find *Crabtree v. Bethlehem Steel Corp.*, 7 BLR 1–354 (1984), persuasive authority, although it is true we do not have to follow it. There need be no requirement that the deputy commissioner must identify all potential responsible operators in one proceeding, but he should identify or make identification "as soon after the filing of the claim as the evidence obtained permits."

For the foregoing reasons, I respectfully DISSENT.