

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-14-1997

# Lango v. Director OWCP

Precedential or Non-Precedential:

Docket 96-3293

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation

"Lango v. Director OWCP" (1997). *1997 Decisions.* Paper 12.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/12

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

_____

No. 96-3293

_____

MARY LANGO,
Widow of ANDREW F. LANGO,

Petitioner

v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS,

Respondent/Party-in Interest

_____

On Petition for Review of a Decision of
the Benefits Review Board (BRB No. 95-1659)

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 13, 1997

Before:  SLOVITER, Chief Judge,
GREENBERG and SCIRICA, Circuit Judges

(Opinion filed January 14, 1997)

_____

Maureen H. Krueger
Jenkintown, PA  19046

        Attorney for Petitioner

J. Davitt McAteer
  Acting Solicitor of Labor
Donald S. Shire
  Associate Solicitor
Christian P. Barber
  Counsel for Appellate Litigation
Barry H. Joyner
United States Department of Labor
Office of the Solicitor
Washington, DC  20210

        Attorneys for Respondent

1

SLOVITER, Chief Judge.

Before us is a Petition for Review filed by Mary Lango, widow of a deceased coal miner, from the decision of the Benefits Review Board (BRB) affirming the denial by the Administrative Law Judge (ALJ) of her claim for survivors' benefits under the Black Lung Benefits Act, 30 U.S.C. §§ 901 – 945. The sole issue before us in this case is whether there was substantial evidence to support the decision reached by both the BRB and the ALJ that Mrs. Lango failed to establish that her husband's pneumoconiosis was a contributing cause of his death. Although we find resolution of that issue relatively straightforward, there is a procedural aspect of the case which we believe merits comment.

**I.**

Mrs. Lango's husband worked for sixteen and a half years as a miner and died at the age of 56 on August 9, 1982. On August 18, 1982, Mrs. Lango filed a claim for survivors' benefits under the Black Lung Benefits Act, 30 U.S.C. §§ 901–945, which was denied on September 29, 1982. On October 19, 1982, she requested a formal hearing before an Administrative Law Judge, a request that the brief for the Respondent Director, Office of Workers' Compensation Programs, concedes was timely. Nonetheless, after she still had not received a hearing on her original claim for almost twelve years, she filed another claim for survivors' benefits dated January 21, 1994.

The still-pending 1982 claim was merged with the 1994 claim, and the ALJ held a hearing on January 19, 1995. A decision was finally issued denying benefits on May 15, 1995, which the BRB affirmed. It is that decision that is before us, more than 14 years after the claim was filed. By the time this case is resolved, Mrs. Lango will be 70 years old.

The Respondent offers no adequate explanation for this unseemly delay. Its brief merely states that "for reasons which are not apparent from the record, DOL [the Department of Labor] did not refer the case to the Office of Administrative Law Judges for a formal hearing." Respondent's brief at 3. In a footnote respondent states: "The Director regrets and apologizes for the lengthy delay in the adjudication of Mrs. Lango's claim." Id. at n.2.

Were this the only case to come to our attention with such delay, we would be inclined to attribute it to a rare bureaucratic snag. However, we note that some recent black lung cases in this circuit suggest that this dismaying inefficiency is not unusual; in fact, the problem appears to be common enough that a brief digression is in order. In Kowalchick v. Director, OWCP, 893 F.2d 615 (3d Cir. 1990), benefits were awarded seventeen years after the initial claim was filed. Fourteen years passed in Sulyma v. Director, OWCP, 827 F.2d 922 (3d Cir. 1987), and, as the opinion in that case revealed, Mr. Sulyma was 74 years old when he finally received benefits. Ten years passed in Gonzales v. Director, OWCP, 869 F.2d 776 (3d Cir. 1989). Nineteen years were required to grant benefits in Kline v.

3

Director, OWCP, 877 F.2d 1175 (3d Cir. 1989).  Almost seventeen years elapsed in Keating v. Director, OWCP, 71 F.3d 1118 (3d Cir. 1995).  As far as we can tell, it appears that many cases languish while waiting for an ALJ or the BRB to hear them.  Although there may have been special circumstances in some of these cases that explain the delay, and we have not exhaustively examined the records, there is enough basis in the mere recitation of the facts to prompt consideration by the relevant administrators beyond a mere apology.

Delays are especially significant for recipients of black lung benefits since most are nearing the end of their lives.  Claimants have less time to use the benefits, and they often must wait when illness is increasing their expenses but while retirement has reduced their income.  Worse, some may die before litigation resolves their claims.

Chief Judge Posner has expressed similar concerns about black lung cases in the Seventh Circuit.  In Amax Coal Co. v. Franklin, 957 F.2d 355, 356 (7th Cir. 1992), he remarked,

> As so often in black lung cases, the processing of the claim has been protracted scandalously . . .  Such delay is not easy to understand.  These are not big or complex cases . . . . [T]he typical hearing lasts, we are told, no more than an hour . . .  The delay in processing these claims is especially regrettable because most black lung claimants are middle-aged or elderly and in poor health, and therefore quite likely to die before receiving benefits if their cases are spun out for years.  We hope that Congress will consider streamlining the adjudication of disability benefits cases (not limited to black lung) along the lines suggested by the Federal Courts Study Committee.  See the Committee's *Report* (April 2, 1990), at pp. 55-58.

4

According to one commentator who cited official reports to Congress, the approval rate for applicants for federal black lung benefits is exceedingly low. See Timothy F. Cogan, Is the Doctor Hostile? Obstructive Impairments and the Hostility Rule in Federal Black Lung Claims, 97 W. Va. L. Rev. 1003, 1004 (1995). It may be that the lengthy time required to process a claim is partly responsible. Cogan estimates that on average it takes about a decade after an attorney opens a file on a black lung case until benefits are paid and the attorney can collect a fee. Thus, the magnitude of the delays is also likely to affect the legal representation available to claimants. Id. at 1004 n.3. Hopefully, the publication of our concern will come to the attention of authorities who can do something about it.

We, of course, are not authorized to require an award of benefits based on an inexplicably long delay, and thus turn to the merits of the matter before us. We must decide whether the ALJ or the Benefits Review Board committed an error of law. Kowalchick v. Director, OWCP, 893 F.2d at 619. Under the BRB's standard of review, the ALJ's factual findings must be supported by substantial evidence. Id. Therefore, this court must, when reviewing factual findings, "independently review the record and decide whether the ALJ's findings are supported by substantial evidence." Id. (citations omitted).

**II**.

5

Under 30 U.S.C. § 901(a) (1982), Mrs. Lango is entitled to benefits if her husband's death was "due to pneumoconiosis." When a claim is filed on or after January 1, 1982, "death will be considered due to pneumoconiosis if any of the following criteria is met: . . . (2) where pneumoconiosis was a substantially contributing cause or factor leading to the miner's death or where the death was caused by complications of pneumoconiosis." 20 C.F.R. § 718.205(c)(2).

In Lukosevicz v. Director, OWCP, 888 F.2d 1001 (3d Cir. 1989), this court considered the meaning of the regulatory phrase a "substantially contributing cause or factor." After surveying the legislative history of the 1981 Black Lung Benefits Amendments, we held that pneumoconiosis is a substantially contributing cause whenever it actually hastens a miner's death even if a disease unrelated to pneumoconiosis played a role as well. Id. at 1006. Thus, we concluded that even if pneumoconiosis hastened by only a few days a miner's death from pancreatic cancer, there was a basis to award benefits. Our interpretation in Lukosevicz has been followed by at least three other circuits. See Brown v. Rock Creek Mining Co., Inc., 996 F.2d 812, 816 (6th Cir. 1993); Peabody Coal Co. v. Director, OWCP, 972 F.2d 178, 183 (7th Cir. 1992); Shuff v. Cedar Coal Co., 967 F.2d 977, 979 (4th Cir. 1992).

In this case, there appears to be no dispute that Mr. Lango's death was caused by lung cancer. Mrs. Lango notes that the ALJ did find that x-ray evidence showed Mr. Lango had pneumoconiosis, a finding the Director does not challenge. The

6

ALJ also found that no evidence rebutted the presumption in §718.203(b) that Mr. Lango's pneumoconiosis resulted from his sixteen and a half years of coal mine employment. However, the ALJ denied benefits based on his finding that Mrs. Lango did not provide "credible and substantial evidence that pneumoconiosis contributed to or hastened the miner's death." App. at 14.

The only evidence introduced by the claimant in an effort to show that Mr. Lango's pneumoconiosis hastened his death was his death certificate, which had been signed by Dr. Anthony DiNicola, his treating physician for 25 years, the hospital records, and a report written in 1994 by Dr. DiNicola stating that in his opinion pneumoconiosis hastened death. App. at 49. Inexplicably, at the 1995 hearing before the ALJ the claimant did not proffer any evidence by Dr. DiNicola, who was still available to testify about the basis of his opinion.

Looking to the three sources of evidence, the death certificate, the doctor's report, and the hospital records, we note that the death certificate listed lung cancer under the heading "immediate cause of death." App. at 39. It also listed anthracosilicosis, a form of pneumoconiosis according to § 718.201, as a significant condition contributing to death. Since Dr. DiNicola signed the death certificate, the ALJ looked to Dr. DiNicola's report, even though it was prepared 14 years after Mr. Lango's death, to ascertain if there was a reasoned basis for the conclusion that pneumoconiosis contributed to Mr. Lango's death set forth in the 1982 death certificate and the 1994 report.

7

However, in his report, Dr. DiNicola merely opined: "[b]ecause of the associated co-worker's [sic] Pneumoconiosis, chronic obstructive pulmonary disease, that is, Anthracosilicosis, I can state that this entity of Pneumoconiosis hastened his death." App. at 50. Dr. DiNicola gave no basis for this conclusion. His report merely stated that "I have enclosed pertinent records; copies from The Pottsville Hospital and Warne Clinic, within this packet." App. at 49. Although the records do support his diagnoses of anthracosilicosis and lung cancer, this is not an issue in dispute. The difficulty that the ALJ, the BRB, and we find is that the hospital records do not specifically explain the doctor's conclusion that the miner's death was hastened by pneumoconiosis.

It is noteworthy that in rejecting the claim because of inadequate evidence to show that pneumoconiosis contributed to Mr. Lango's death, the ALJ did not rely on the opinion by Dr. Samuel Spagnolo, the physician consulted by the OWCP, that pneumoconiosis did not hasten Mr. Lango's death. On the contrary, the ALJ rejected Dr. Spagnolo's opinion as inconclusive since Dr. Spagnolo did not see any of the positive x-ray evidence showing Mr. Lango had pneumoconiosis. Nonetheless, the burden remained on the claimant, and the claimant failed to meet it.

Mrs. Lango argues that Dr. DiNicola had at least as plausible a basis for his judgment as did the doctor in Lukosevicz, whose conclusion as to the contributing nature of pneumoconiosis was deemed a sufficient basis to support the award of benefits. As the Director notes, however, the critical

8

difference is that in Lukosevicz the physician who rendered the opinion had performed an autopsy, a revealing diagnostic tool providing physical evidence to support a medical conclusion. In contrast, neither Dr. DiNicola nor anyone else performed an autopsy of Mr. Lango.

The mere statement of a conclusion by a physician, without any explanation of the basis for that statement, does not take the place of the required reasoning. As the ALJ stated, "An assertion which does not explain how the doctor reached the opinion expressed or contain his reasoning does not qualify as a reasoned medical opinion." App. at 13. See Freeman United Coal Corp. v. Cooper, 965 F.2d 443 (7th Cir. 1992) (rejecting a conclusory statement by doctor that pneumoconiosis contributed to the miner's death).

It is true, as Mrs. Lango stresses, that Dr. DiNicola was the miner's treating physician for many years, and that the treating physician's opinion merits consideration. See Schaaf v. Matthews, 574 F.2d 157, 160 (3d Cir. 1978). Although there is some question about the extent of reliance to be given a treating physician's opinion when there is conflicting evidence, compare Brown v. Rock Creek Mining Co., 996 F.2d 812, 816 (6th Cir. 1993) (opinions of treating physicians are clearly entitled to greater weight than those of non-treating physicians) with Consolidation Oil Co. v. OWCP, 54 F.3d 434, 438 (7th Cir. 1995) (improper to favor opinion of treating physicians over opinions of non-treating physicians), the ALJ may permissibly require the treating physician to provide more than a conclusory statement

9

before finding that pneumoconiosis contributed to the miner's death.

The claimant emphasizes that the ALJ mistakenly thought that hospital records for the week prior to Mr. Lango's death were missing, when, in fact, Mr. Lango was not in the hospital for that period. Thus, the claimant hypothesizes that the ALJ's mistake about the hospital records affected his assessment of the credibility of Dr. DiNicola's report. However, the ALJ did not disregard information in the hospital records that was otherwise relevant. Nothing in those hospital records supplies the link that is missing in this case – a nexus between the pneumoconiosis and Mr. Lango's death.

The BRB recognized the ALJ's mistake but nevertheless concluded: "although claimant contends that the administrative law judge erred in stating that the miner's hospital records were incomplete, the administrative law judge properly found that the hospital records do not indicate the role the miner's lungs and/or anthracosilicosis played in the miner's death." App. at 6. Regretfully, we must agree.

In evaluating the opinions set forth in a medical report, we must examine the validity of the reasoning of the opinion. Director, OWCP v. Siwiec, 894 F.2d 635, 639 (3d Cir. 1990). The court in Risher v. Office of Workers' Compensation Programs, 940 F.2d 327, 331 (8th Cir. 1991), stated that a factfinder "may disregard a medical opinion that does not adequately explain the basis for its conclusion." See also Brazzalle v. Director, OWCP, 803 F.2d 934, 936 (8th Cir. 1986);

10

Tennessee Consolidated Coal Co. v. Crisp, 866 F.2d 179, 185 (6th Cir, 1989); Shrader v. Califano, 608 F.2d 114, 118 (4th Cir. 1979).

The Risher court noted that the mere fact that a death certificate refers to pneumoconiosis cannot be viewed as a reasoned medical finding, particularly if no autopsy has been performed. See Risher, 940 F.2d at 331. Therefore, on the basis of the record in this case and as presented to both the ALJ and the BRB, there was no basis upon which we could overturn their decisions.

We point out that in its brief the Director notes that Mrs. Lango can request a modification based on another opinion by Dr. DiNicola if he can supply one, meeting the requirements of the statutory scheme. The Director cites in support 33 U.S.C. § 922, as incorporated by 30 U.S.C. § 932(a), 20 C.F.R. § 725.310 (permitting DOL to reconsider denial of benefits upon timely request by a party) and Keating v. Director, OWCP, 71 F.3d 1118 (3d Cir. 1995) (construing the grounds upon which a denial of benefits can be reconsidered broad enough to include the ultimate fact of denial).

## III.

For the reasons set forth above, we will deny the petition for review of an order of the Benefits Review Board without prejudice to Mrs. Lango's right to take advantage of the opportunities noted in the Director's brief.

11