

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-13-2002

# Estate Ann Krofcheck v. Director OWCP

Precedential or Non-Precedential:

Docket 1-2602

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

## Recommended Citation

"Estate Ann Krofcheck v. Director OWCP" (2002). *2002 Decisions.* Paper 171.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/171

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


No. 01-2602


ESTATE OF ANN KROFCHECK
(Widow of PAUL KROFCHECK),


Petitioner


v.


DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS,
UNITED STATES DEPARTMENT OF LABOR


On Petition for Review of an Order
of the Benefits Review Board
United States Department of Labor
No. BRB-00-0701 BLA


Submitted Under Third Circuit LAR 34.1(a)
February 5, 2002

Before: SLOVITER, and AMBRO, Circuit Judges
POLLAK*, District Judge

(Opinion filed March 12, 2002)


OPINION


     *Honorable Louis H. Pollak, United States District Judge for the
Eastern District
of Pennsylvania, sitting by designation.
AMBRO, Circuit Judge

     The estate of a deceased miner's widow appeals the Department of
Labor Benefits
Review Board's affirmance of the denial of miner's and survivor's benefits
under the
Black Lung Benefits Act, 30 U.S.C.   901 et seq.  We affirm.
                              I.
     Paul Krofcheck (the "miner") worked in underground mines for fifteen
and one-

half years.  A blood gas study performed in 1973 yielded values too high to qualify him for a statutory presumption of pneumoconiosis, or "black lung" disease.  He filed a claim for miner's benefits on May 22, 1978.  On August 23, 1978, he was admitted to the hospital with partial paralysis of his right side.  Three days later he suffered congestive heart failure.  A pulmonary function test administered on September 11, 1978, found results that qualified him for a statutory presumption of pneumoconiosis.  At the time of this test the examining doctor concluded that he suffered from "moderately severe obstructive ventilatory pattern, with excellent response to bronchodilators.  Compatible with reversible bronchospasm."  He was released and readmitted several times during the next months, each time with diagnoses of congestive heart failure.  He died on February 24, 1979, with the cause of death listed as "cardiac arrest due to coronary occlusion with myocardial infarction due to arteriosclerotic heart disease."

The procedural history of this action spans twenty-three years, and is well known to the parties.  We will summarize it briefly.  Ann Krofcheck, the miner's widow, filed a claim for survivor's benefits on March 11, 1979.  The Department of Labor denied both survivor's benefits and miner's benefits after determining that the evidence did not show that the miner suffered from pneumoconiosis at the time of his death.  After a series of hearings, remands, and requests for reconsideration, the Administrative Law Judge ("ALJ") denied benefits once again on March 17, 2000, and the Board affirmed on May 22, 2001.  Claimant appealed.

## II.

We review the Board's decision for errors of law and to determine if it adhered to its statutory scope of review.  Kertesz v. Crescent Hills Coal Co., 788 F.2d 158, 162 (3d Cir. 1986).  The ALJ's findings of fact are conclusive if supported by "substantial evidence in the record considered as a whole."  33 U.S.C.  921(b)(3) (2001), 30 U.S.C. 932(a) (2001).  We must independently review the record to determine if substantial evidence exists to support the ALJ's findings.  Lango v. Dir., Office of Workers' Comp. Programs, 104 F.3d 573, 576 (3d Cir. 1997).  Substantial evidence is "more than a mere

scintilla."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted).  It is not "a
large or significant amount of evidence, but rather 'such relevant evidence as a reasonable
mind might accept as adequate to support a conclusion.'"  Pierce v. Underwood, 487 U.S.
552, 565 (1988) (citation omitted).

                                    III.
     On March 2, 2001, the Board requested that the parties brief the question of
whether 20 C.F.R.  718.104(d) (2002) applies to the claim at issue.  Revisions to this
regulation require the adjudicator of a claim to "give consideration to the relationship
between the miner and any treating physician whose report is admitted into the record."
Id.  The adjudicator may give controlling weight to the treating physician's opinion
"provided that [the weight assigned] shall also be based on the credibility of the
physician's opinion in light of its reasoning and documentation, other relevant evidence
and the record as a whole."  Id.  The Board held that "[t]he revisions to the regulation at
20 C.F.R.  718.104(d) apply to claims filed after January 19, 2001.  Consequently, the
provision requiring that special consideration be accorded to the report of a treating
physician does not apply to the instant claim."
     The Board did not err in its conclusion that the "treating physician rule" of 20
C.F.R.  718.104(d) does not apply here.  20 C.F.R.  718.101(b) reads:
          The standards for the administration of clinical tests and examinations
     contained in this subpart shall apply to all evidence developed by any party
     after January 19, 2001 in connection with a claim governed by this part . . .
     These standards shall also apply to claims governed by part 727 [Review of
     Pending and Denied Claims under the Black Lung Benefits Reform Act of
     1977] . . . but only for clinical tests or examinations conducted after
     January 19, 2001.

(emphasis added).  Because  718.101 applies the new standards its subpart sets out only
to examinations conducted after January 19, 2001,  718.104's treating physician rule
does not apply to this case.
     Claimant attempts to use  725.2(b) and (c) to justify applying the rule
retroactively to her case.  As she points out, these sections provide that "this part" applies

to claims pending on August 18, 1978 and to claims pending on January 19, 2001.
However, it is clear from the context that the words "this part" refer to the provisions of
725, not to those of 718. Claimant cannot use 725's language to justify applying the
treating physician rule of 718.104.

Claimant next argues that the ALJ and Board erred in not invoking the interim
presumption in 20 C.F.R. 727.203 (1999) of death due to pneumoconiosis, established if
one of four conditions is met and the miner has worked in a mine for ten years. These
conditions are:

(1) A chest roentgenogram (X-ray), biopsy, or autopsy establishes the
existence of pneumoconiosis . . .; (2) Ventilatory studies establish the
presence of a chronic respiratory or pulmonary disease . . . as demonstrated
by values which are equal to or less than the values specified in the
following table; (3) Blood gas studies which demonstrate the presence of an
impairment in the transfer of oxygen from the lung alveoli to the blood as
indicated by values which are equal to or less than the values specified in
the following table; (4) Other medical evidence, including the documented
opinion of a physician exercising reasoned medical judgment, establishes
the presence of a totally disabling respiratory or pulmonary impairment.

20 C.F.R. 727.203 (1999). Claimant argues that 727.203(2)'s presumption is invoked
because ventilatory studies establish that the miner had qualifying forced expiratory
volume (FEV) values. Claimant also argues that pneumoconiosis is established under
727.203(4), which invokes the presumption if "[o]ther medical evidence, including the
documented opinion of a physician exercising reasoned medical judgment, establishes the
presence of a totally disabling respiratory or pulmonary impairment."

The ALJ determined that the studies claimant relies upon were not valid and
credible, and therefore did not invoke 203(a)(2)'s interim presumption. Specifically, he
pointed to the lack of spirometric tracings and to the absence of a statement of the miner's
understanding and cooperation that 20 C.F.R. 410 requires. Id. Claimant argues that

the tracings were destroyed in accordance with regular hospital procedure, and that Dr.
C. Vaughn Strimlan's assurances that the miner's effort and cooperation were good
should cure any deficiencies. She argues that the ALJ erred in holding that these tracings
were mandatory. In fact the ALJ did not so hold, but rather evaluated Dr. Strimlan's
assurances that the test results were valid and discounted them.

There was substantial evidence for the ALJ's conclusion. The ALJ faulted Dr.
Strimlan for failing to consider the effect of the miner's stroke. He concluded that Dr.
Strimlan's statement at the time of the test (that the miner suffered from "moderately
severe obstructive ventilatory pattern, with excellent response to bronchodilators.
Compatible with reversible bronchospasms"), which is inconsistent with "the progressive
and irreversible nature of pneumoconiosis," was more credible than the statements he
made years later. The ALJ gave greater weight to the opinion of Dr. Leon Cander, who
concluded that heart failure caused the pulmonary test results, citing the normal results
obtained prior to the miner's heart failure.

The record also provides substantial evidence to support the ALJ's decision not to
invoke 203(a)(4)'s interim presumption, thereby rejecting the opinions of Drs. Strimlan
and Allan Freedman, who believed that the miner was disabled by pneumoconiosis, and
that it in part caused his death. The ALJ cited the negative X-ray evidence and the fact
that the pulmonary function test the doctors relied upon revealed results inconsistent with
pneumoconiosis ("excellent response to bronchodilator"). He noted that the miner's
arterial blood gas results were normal thirty years after he left the mine, and only became
abnormal following his stroke. Coupled with Dr. Cander's analysis, this was substantial
evidence for not invoking the interim presumption under 727.203(a)(4).

Claimant argues that the ALJ erred in holding that even if an interim presumption
under 727.203(a) were invoked, it was rebutted. Appellant's Br. at 20-21. We need not
reach this issue because the ALJ relied upon substantial evidence to determine that no
such presumption was invoked.

Finally, claimant contends that the ALJ erred in not performing a de novo review
of the lay evidence under 727.203(a)(5) and that the Board erred in holding this to be

harmless error.  Section 727.203(a)(5) provides that "[i]n the case of a deceased miner where no medical evidence is available, the affidavit of the survivor of such miner or other persons with knowledge of the miner's physical condition, demonstrates the presence of a totally disabling respiratory or pulmonary impairment."  The ALJ stated that "this decision is based upon a complete and thorough de novo review of all of the lay and medical evidence."  He "carefully reviewed and weighed the testimony of the miner's widow . . . and [her] lengthy handwritten letter dated October 26, 1982."  He concluded "although the lay evidence (as well as the medical evidence) indicates that the miner was disabled by health problems (e.g., heart disease, stroke), it fails to establish total disability due to a respiratory or pulmonary condition."  These statements indicate that the ALJ did perform a de novo review of the lay evidence; hence we need not decide whether his failure to do so constituted harmless error.

IV.

For the foregoing reasons, the Board's decision is affirmed.


TO THE CLERK:

Please file the foregoing Opinion.


By the Court,


/s/ Thomas L. Ambro
Circuit Judge