

1998 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-27-1998

# Venicassa v. Consol Coal Co

Precedential or Non-Precedential:

Docket 96-3736

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1998

## Recommended Citation

"Venicassa v. Consol Coal Co" (1998). *1998 Decisions.* Paper 36.
http://digitalcommons.law.villanova.edu/thirdcircuit_1998/36

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1998 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed February 27, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 96-3736

ARMANDO VENICASSA,

     Petitioner

v.

CONSOLIDATION COAL COMPANY

and

DIRECTOR, OFFICE OF WORKERS' COMPENSATION
PROGRAMS, UNITED STATES DEPARTMENT OF LABOR,

     Respondents

On Petition for Review of an Order of the Benefits
Review Board, United States Department of Labor
BRB No. 95-1760

Argued September 25, 1997

Before: COWEN, ROTH and LEWIS, Circuit Judges

(Opinion Filed February 27, 1998)

       Robert L. Johnson, Esquire (Argued)
       Paul A. Tershel, Esquire
       Tershel & Associates
       55 South Main Street
       Washington, PA 15301

        Attorneys for Armando Venicassa

J. Davitt McAteer,
Acting Solicitor of Labor
Donald S. Shire,
Associate Solicitor
Christian P. Barber, Esquire
Jeffrey S. Goldberg, Esquire (Argued)
United States Department of Labor
200 Constitution Avenue, N.W.
Suite N-2605
Washington, D.C. 20210

  Attorneys for Director, Office of
  Workers' Compensation Programs,
  United States Department of Labor

William S. Mattingly, Esquire
 (Argued)
Jackson & Kelly
600 Hampton Center, Suite B
P.O. Box 619
Morgantown, WV 26507

  Attorney for Consolidated Coal
  Company

OPINION OF THE COURT

ROTH, Circuit Judge:

Armando Venicassa has filed a Petition for Review from the decision of the Benefits Review Board ("Board"), affirming the denial by the Administrative Law Judge ("ALJ") of Venicassa's claim for black lung benefits under the Black Lung Benefits Act, 30 U.S.C. S 901, et. seq. (the "Act"). In an earlier hearing, the ALJ had dismissed United States Steel Corporation, the responsible coal mine operator, designated by the Office of Worker's Compensation Programs ("OWCP"), and had awarded benefits to Venicassa, to be paid by the Black Lung Disability Trust Fund ("Trust Fund"). The Director of the OWCP appealed this decision to the Board. The Board then remanded Venicassa's claim to the OWCP to permit the OWCP to identify a second responsible operator to pay

2

benefits. We must decide whether, after the award on the merits to Venicassa, the Board could vacate that award so that the ALJ might designate a second responsible operator and begin the process all over again.

For the reasons we discuss below, we conclude that the Board erred when it remanded this case for designation of a second responsible operator. We will, therefore, grant the petition for review, vacate the decision of the Board, and remand this case to the Board to reinstate the ALJ's ruling, granting Venicassa's claim for benefits and ordering the Trust Fund to pay them.[1]

We have appellate jurisdiction in this matter pursuant to the Longshoreman's and Harbor Workers' Compensation Act, 33 U.S.C. S 902, made applicable to Black Lung Benefits cases by 30 U.S.C. S 932(a). The decision of the Benefits Review Board is a final order under Section 21(c) of the Longshoreman's and Harbor Workers' Compensation Act, 33 U.S.C. S 921(c) as incorporated by section 422(a) of the Black Lung Benefits Act, 30 U.S.C. S 932(a).

FACTS AND PROCEDURAL BACKGROUND

This case comes to us with a lengthy procedural history, due in large part to the long delay by the OWCP in processing Venicassa's claim and to the acknowledged error by the OWCP in designating the responsible coal mine operator.[2]

---

1. We are also asked to decide whether the ALJ's determination at a second hearing, denying benefits, was supported by substantial evidence. Venicassa submits that the denial of benefits by the ALJ on remand was irrational because the ALJ relied on the same medical evidence that he had relied on to make the initial award of benefits. Because of our decision on the second designation issue, we do not need to reach this question.

2. Unfortunately, the OWCP's failure to designate the proper responsible operator at the outset has exacerbated a problem all too familiar to us. We have confronted a disturbing record of delay in processing claims for black lung benefits in prior cases. See Kowalchick v. Director, OWCP, 893 F.2d 615 (3d Cir. 1990) (Benefits awarded 17 years after the initial claim was filed); Lango v. Director, OWCP, 104 F.3d 573 (3d Cir. 1997) (noting long delay in processing claim for benefits).

The petitioner in this case, Armando Venicassa, worked in and around coal mining operations for 43 years before he retired in 1985. In 1986, he filed a claim with the OWCP for benefits under the Black Lung Benefits Act. Under the Act, benefits are awardable to persons who are totally disabled due to pneumoconiosis, a disease known as "black lung." The OWCP processed Venicassa's claim for benefits with the information he supplied. Venicassa indicated clearly on his claim form that his most recent employer was Consolidation Coal Company, for whom he worked from January 1984 until his retirement in August 1985. However, despite being supplied with accurate information, the OWCP erroneously designated United States Steel Corporation ("U.S. Steel") as the responsible operator.3

Venicassa's claim was then referred to the Department of Labor's Office of Administrative Law Judges for a formal hearing. In February 1987, the Director of the OWCP moved to remand the case for identification of another responsible operator. This motion to remand came 13 months after Venicassa had provided the OWCP with the information to identify the proper responsible operator. In August 1988, prior to the formal hearing on Venicassa's claim, the ALJ denied the motion to remand.4 Citing the Benefits Review Board decision in Crabtree v. Bethlehem Steel Corp.,7 BLR 1–354 (1984), the ALJ held that due process concerns dictated that the hearing go forward and that, if U.S. Steel was not the responsible operator, it would be dismissed and the Director of the OWCP substituted to defend the claim. At the hearing, Venicassa testified that U.S. Steel had been improperly designated as the responsible operator. The ALJ then dismissed U.S. Steel and substituted the Director.

---

3. Venicassa indicated on his claim form that he was employed by U.S. Steel from 1942 until January 1984. The regulations define "responsible operator" as "the operator or other employer with which the miner had the most recent periods of cumulative employment of not less than one (1) year..." 20 C.F.R. S 725.493 (a)(1).

4. The record reflects that the ALJ, who ruled on the remand motion in August 1988, did not receive the case until May or June of that year even though the case was referred to the Office of Administrative Law Judges in September of the previous year. Appendix 56–57.

4

To succeed on a claim for black lung benefits, a claimant must establish that he suffers from pneumoconiosis and, as a result, is totally disabled. In addition, the claimant must establish that the pneumoconiosis is the result of coal mining. Under the Act, pneumoconiosis may be established by x-ray evidence or by a finding of a physician that the miner suffers from the disease. 30 U.S.C. S 902(f)(1) (1986); 20 C.F.R. S 718.202.

At the hearing, the ALJ concluded that Venicassa's chest x-rays did not establish pneumoconiosis. However, the ALJ also heard five medical experts, four of whom diagnosed some form of lung disease related to coal dust exposure. The one physician, who did not find lung disease related to coal exposure, did so without providing his reasoning. The ALJ, therefore, ascribed little weight to that opinion. The ALJ concluded that the weight of medical opinion established the finding of pneumoconiosis. Since Venicassa had at least 10 years of coal mining employment, the ALJ found that Venicassa was entitled to the statutory presumption that his pneumoconiosis arose as a result of coal mine employment. 30 U.S.C. S 921(c) (1986). The ALJ credited Venicassa with 43 years of coal mine employment and found evidence sufficient to establish the existence of pneumoconiosis due to that employment. As a result, on June 23, 1989, the ALJ awarded benefits to Venicassa.

The Director appealed this decision to the Benefits Review Board. In its review of the ALJ's decision, the Board did not address the merits of the entitlement to benefits. Instead, it vacated the award and remanded the case to the deputy commissioner for determination of another responsible operator. The Board found it significant that the Director had filed the Motion to Remand before a formal hearing had been held. For this reason, the Board held that the due process concerns of relitigating the case were less compelling than those facing the Crabtree Court.

On remand, the OWCP designated Consolidation Coal as the responsible operator. Venicassa's benefits were then stopped. In December 1994, a second hearing on Venicassa's eligibility for benefits was held before the same ALJ. Consolidation Coal submitted evidence in addition to that presented at the first hearing. Venicassa submitted

only the record of the medical evidence from thefirst hearing. In addition, Venicassa testified about the deterioration of his health during the more than five years since the initial award of benefits. The physicians, who had presented medical testimony at the first hearing regarding Venicassa's respiratory problems, did not testify in person at the second hearing.

At the conclusion of the second hearing, the ALJ denied Venicassa's claim for benefits. Venicassa appealed to the Benefits Review Board on June 23, 1995. On October 22, 1996, the Board issued a final decision, affirming the decision of the ALJ. Venicassa then timely filed his petition for review with this Court.

ANALYSIS

We review decisions of the Benefits Review Board and of the ALJ for errors of law. Lango v. Director, OWCP, 104 F.3d 573, 575 (3d Cir. 1997); Kowalchick v. Director, OWCP, 893 F.2d 615, 619 (3d Cir. 1990).

The petitioner contends that the Board's reversal of the award of benefits and its decision to remand this case for the designation of a second responsible operator violated due process and subjected him to substantial prejudice. He argues that to make him relitigate a claim, on which he has already won an award of benefits on the merits, violates due process. He further contends that, under the rationale of the Benefits Review Board in Crabtree, the efficient administration of the Black Lung Benefits Act dictates that the case should not have been remanded and that the Trust Fund should be reinstated as payor.

The Director argues that, although a mistake occurred in the designation of U.S. Steel as the responsible operator at the outset, the Director attempted to correct the mistake with the motion to remand for designation of another responsible operator. The Director further contends that the ALJ's denial of that motion was in error and that the Trust Fund is not the appropriate payor because ultimately Consolidation Coal was identified as the responsible operator.

We begin our review with an examination of the regulations, under the Black Lung Benefits Act, which govern the designation of a responsible operator. These regulations provide:

> At any time during the processing of a claim under this part, after sufficient evidence has been made available to the deputy commissioner, the deputy commissioner may identify a coal mine operator...which may be liable for the payment of the claim .... Such identification shall be made as soon after the filing of the claim as the evidence obtained permits ....

20 C.F.R. S 725.412(a). The responsible operator is defined as "the operator or other employer with which the individual had the most recent periods of cumulative employment of not less than one (1) year." 20 C.F.R. S 725.493(a)(1).

It is uncontested that, as of January 1986 when Venicassa first filed his claim, the OWCP had all the evidence necessary to designate the proper responsible operator. However, the Director argues that, under the Act and the applicable regulations, a coal mine operator may be designated as responsible operator for the purposes of defending a claim for Black Lung Benefits "at any time" during the processing of the claim. The Director claims, therefore, that the ALJ improperly refused to remand the case for the designation of a second responsible operator.

The regulations also state, however, that the identification of the responsible operator shall be made "as soon after the filing of the claim as the evidence obtained permits." For this reason, Venicassa argues that, since from the outset the Director had enough information to name the proper responsible operator, Venicassa should not be penalized for the Director's failure to do so. Venicassa contends that, because the OWCP did not make a prompt resolution of the responsible operator issue, the ALJ's decision to go forward with the hearing on the merits was appropriate; to proceed otherwise would have subjected Venicassa to further substantial delay in the processing of his claim.

7

When the ALJ considered the Director's motion to remand the case for designation of another responsible operator, he relied on the decision of the Benefits Review Board in Crabtree. In Crabtree, the Board dismissed Bethlehem Steel as the responsible operator. Instead, however, of remanding the case for identification of another responsible operator, the Board held that the Trust Fund would be liable for benefits because the delay involved in relitigating the claim would offend due process. In Crabtree, the Board concluded that "the Department of Labor is not entitled to a second opportunity to identify another putative responsible operator." Id. at 1-356-357.

> Remand for reconsideration of the operator issue would be tantamount to relitigating the claim. If the Department identifies another responsible operator, then that operator is entitled to contest the claim, develop its own evidence, request a hearing, etc., until it has exhausted the full gamut of available procedures for adjudicating entitlement. The fact that claimant has established entitlement against employer does not bind any other operator(s) who were not a party to the proceedings. This piecemeal approach encourages two undesirable results. First, a claimant who has established entitlement in the first round of proceedings may lose his award in a later round against another operator. A first finding of entitlement, even though fully developed and litigated, can be defeated in subsequent proceedings by a different operator, and not always on the merits. Second, piecemeal litigation obviously is not compatible with the efficient administration of the Act and expeditious processing of claims.

> In view of the aforementioned considerations, the Department must resolve the operator issue in a preliminary proceeding, see 20 C.F.R. S725.412(d), and/or proceed against all putative responsible operators at every stage of the claims adjudication. Even a separate preliminary proceeding on the operator issue alone is more desirable than fully litigating the claim against each operator individually. ... The Trust Fund therefore must assume liability in the absence of any other potentially liable operator.

8

Id. at 1–357.

The Director contends, however, that Crabtree should not have prevented the OWCP from identifying Consolidation Coal as the responsible operator even after the ALJ had awarded benefits payable by the Trust Fund. The Director urges that the critical distinction between Venicassa's case and the Crabtree decision is that here a motion to remand was filed before the hearing on the merits. Therefore, Crabtree does not apply. The Director contends that remand, at the time that the motion was filed, would have been appropriate under Crabtree because remand would have been prior to litigation of the claim; Crabtree held only that the Director could not wait until after the ALJ had awarded benefits against the Trust Fund before seeking to identify a second responsible operator. Because the motion to remand was filed 18 months before the hearing on the merits and was denied prior to the hearing, the Director claims he did not have an opportunity to ascertain the correct responsible operator.5

_____

5. In making this argument, the Director also relies on Director, OWCP v. Trace Fork Coal Company, 67 F.3d 503 (4th Cir. 1995). However, Trace Fork does not in fact support the Director's position. In Trace Fork, the ALJ dismissed the coal company as responsible operator, refusing to remand the case for the designation of another responsible operator, and then named the Trust Fund as payor. The ALJ awarded benefits and the Director appealed the ALJ's finding that the Trust Fund was liable. The Benefits Review Board affirmed the ALJ's ruling. The Fourth Circuit held that dismissal of Trace Fork as responsible operator was proper and affirmed the refusal to remand for the naming of another responsible operator. The Board and the Fourth Circuit based their decisions on Crabtree and on the holding in that case that the Director must resolve the responsible operator issue in a preliminary proceeding or else proceed against all potential operators at each stage of the adjudication in order to avoid piecemeal litigation and due process concerns. The Trace Fork court found that to remand the case would allow a second operator to challenge the claimant's entitlement to benefits. The court concluded, "We are unwilling to potentially upset the finding that [claimant] is entitled to benefits, a matter already fully litigated on the merits. The Director had full opportunity, and even a motion, to ascertain the responsible operator as a preliminary matter, but simply refused." Trace Fork, 67 F.3d at 508.

9

In resolving the motion to remand in the instant case, the ALJ concluded that the "Director blew it" in failing to name the proper responsible operator. (Appendix 56). For this reason, the ALJ dismissed U.S. Steel and substituted the Trust Fund as the responsible party. The ALJ's decision places the incentives in the proper place -- the Director should have gotten it right the first time. That would not have been an onerous task because, from the outset, the OWCP had in its possession all the information necessary to name the proper responsible operator.

The Director, however, argues that the plain language of the regulations allows for the designation of a responsible operator "at any time" during the processing of the claim. Therefore the OWCP should be allowed to rectify its mistake. The Director relies on the Sixth Circuit's decision in Director, O.W.C.P. v. Oglebay Norton Company, 877 F.2d 1300 (6th Cir. 1989).

Although we have not decided a case involving the failure of the OWCP to correctly name the responsible operator in the first instance, Oglebay addresses such a situation in a black lung, widow's benefits case. In Oglebay, the court considered the identification of a responsible operator nearly ten years after the claim was filed. The Director appealed a decision of the Benefits Review Board which had dismissed the company as responsible operator. The Sixth Circuit held that the identification of the company as "responsible operator" nearly ten years after the claim was filed was valid and that the transfer of liability to the Fund was improper. In reaching this conclusion, the Sixth Circuit interpreted the regulation, governing the identification of the responsible operator (20 C.F.R. S 725.412(a)). The Court noted that the regulation permits identification of the responsible operator at any time during the processing of the claim. In addition, the Sixth Circuit found the transfer of liability to the Trust Fund to be improper when there is an affirmative identification of a responsible operator. Oglebay, 877 F.2d at 1304. The court reasoned that neither the applicable statutes nor regulations indicated that identification of the responsible operator should be disregarded merely because it was inefficiently reached; the operator would not be substantially prejudiced in defending the matter on its merits.

10

The Director asks us to disregard Crabtree and follow the
Sixth Circuit's reasoning in Oglebay. We are not, however,
bound by Oglebay. Moreover, the instant case is easily
distinguishable from Oglebay. First, Oglebay involved a
dispute between the OWCP and the responsible operator.
The case before us involves a dispute between the claimant,
the Director, and the putative responsible operator. Second,
in Oglebay the ALJ decided to remand the case for
determination of another responsible operator prior to
holding a hearing on the merits. In the instant case, the
decision to remand was made after a formal hearing on the
merits and after the ALJ had awarded benefits. In other
words, the Crabtree concerns about due process and
piecemeal litigation -- relied on by the ALJ in denying the
motion to remand -- are greater in the instant case than
were those faced by the court in Oglebay.

Moreover, there is another important distinction between
this case and Oglebay. The Oglebay court reasoned that
inefficient identification of the responsible operator does not
invalidate that identification. In our case, however, the
Director had before it all the relevant information necessary
to designate the proper responsible operator -- but failed to
do so. The OWCP's failure here is more than mere
inefficiency. Indeed, this failure penalized Venicassa, who
had already litigated the case on the merits and won. It also
penalized Consolidation Coal, which had to litigate a 10
year old claim.

The Director contends, however, that, because the motion
to remand was made prior to litigation of the claim on the
merits, remand and designation of a responsible operator
were appropriate and did not raise due process concerns.
Consolidation Coal argues, on the other hand, that the
critical issue here is not the timing of the motion to remand
but the timing of the identification of the responsible
operator. To resolve this dispute, we must go back to the
language of the regulation.

The regulation allows for the designation of a responsible
operator "at any time." Thus, the Director asserts that,
upon receiving the motion to remand, the ALJ should have
allowed the designation of a second responsible operator.
The Director argues that, while the OWCP clearly erred in

11

failing to identify Consolidation Coal as the responsible operator at the outset, the ALJ erred in denying the motion to remand the case in order to correct the problem. The Director contends that the Act gives the OWCP sole responsibility for identifying the responsible operator who may be liable for payment of benefits. 20 C.F.R. SS 725.410(b), 725.412. The Director relies on the regulatory language which provides for designation of a responsible operator "at any time during the processing of a claim" and contends that a claim is still being "processed" even after it is referred to the ALJ for a hearing.

While the regulation clearly states that the designation of the responsible operator may be made "at any time," the language of the regulation triggers the process by providing that the designation be made "after sufficient evidence has been made available to the deputy commissioner." The regulation then further limits the process by providing that the designation "shall be made as soon after thefiling of the claim as evidence obtained permits." 20 C.F.R. S 725.412(a). The focus of the regulation is clearly on the swift and accurate designation of the responsible operator so that the claim may be resolved through the presentation of evidence to the fact finder by the appropriate parties.

Because the OWCP did not make a timely designation of the proper responsible operator, nor did it even make a timely attempt to correct its misdesignation or to add Consolidation Coal as a potential responsible operator, we conclude that the ALJ at the first hearing correctly designated the Trust Fund as the defending party. 6

Moreover, this result is consistent with the purpose behind the establishment of the Trust Fund. The Trust Fund was established by the Black Lung Benefits Revenue Act of 1977 "to provide a more effective means of transferring the responsibility for the payment of benefits from the Federal government to the coal industry ...." 20 C.F.R. S 725.490(a). The Black Lung Benefits Revenue Act of 1977, (Pub. Law 95-227) (92 Stat. 11) (1978

---

6. Contrary to the approach of the petitioner, and to the views expressed in the dissent, we do not ground our decision on due process considerations.

U.S.C.C.A.N.) (codified at 30 U.S.C. S 934a). The fund is financed by the coal industry through an excise tax on the sale of coal. 26 U.S.C. S 9501.

The Director argues that the Trust Fund should not be liable in this instance because the Trust Fund was created to assume liability for benefits in the event that no responsible operator could be found. The statute provides that the Trust Fund is available for the payment of benefits in any case in which the Secretary determines that "there is no operator who is required to secure the payment of such benefits." 26 U.S.C. S 9501(d)(B).7

In order to support its argument that the Trust Fund should be liable only in the absence of an identifiable responsible operator, the Director emphasizes a portion of the Act's legislative history which states that Congress intended to ensure that individual coal operators, rather than the Trust Fund, would be liable for claims.8 The Sixth Circuit relied on these statements in holding that, where a responsible operator has been identified, the transfer of

_____

7. The provision reads that the Trust Fund shall be liable for the payment of benefits in any case in which the Secretary determines that:

> (a) the operator liable for the payment of such benefits --

> (i) has not commenced payment of such benefits within 30 days after the date of an initial determination of eligibility by the Secretary, or

> (ii) has not made a payment within 30 days after the payment is due,

> (b) there is no operator who is required to secure payment of such benefits, ...

26 U.S.C. S 9501(d) (emphasis added).

8. "It is further the intention of this section, with respect to claims related to which the miner worked on or after January 1, 1970, to ensure that individual coal operators rather than the trust fund bear the liability for claims arising out of such operator's mines, to the maximum extent feasible." S. Rep. 209, 95th Cong., 1st Sess. 9 (1977), reprinted in
House Comm. On Educ. And Labor, 96th Cong., Black Lung Benefits Reform Act and Black Lung Benefits Revenue Act of 1977, 612 (Comm. Print 1979). See also Old Ben Coal Co. v. Luker, 826 F.2d 688, 693 (7th Cir. 1987).

13

liability to the Trust Fund is improper. Oglebay, 877 F.2d at 1304.

However, investigation into the legislative history indicates that Congress did not contemplate the situation before us. Indeed, the Trust Fund's architects were motivated by a desire to curb the ability of coal mine operators to transfer assets in order to sidestep liability as responsible operators.

At the time of the Trust Fund's creation, its drafters were cognizant of the structural changes in the coal industry which resulted in the consolidation of numerous coal companies and the disappearance of others. They were particularly conscious of the impact of these changes on future claimants and of their effect on the responsibility of successor and former operators.[9]

> During the last two decades, the coal industry has undergone major structural changes. Of the 50 largest coal companies, 29 have become captive of other industries ...In most instances, these acquisitions transferred intact the ownership of the mines and operations of existing coal producers to the larger and more diversified parent corporations. ... It was originally the intent of Congress that such entities should bear the liability for black lung diseases arising out of employment in their mines ... .

S. Rep. 209, at 9.

Thus, while the Act evidences an intent that individual coal mine operators, rather than the Trust Fund, assume liability for the payment of black lung benefits, the rationale behind this determination is the protection of claimants

_____

9. "When the black lung benefits provisions of the Federal Coal Mine Health and Safety Act of 1969 were first enacted, it was the expectation of Congress that after the Federally financed portion of the program terminated, individual coal mine operators would assume the liability for benefits either under an approved state workers' compensation program or under Part C of the Federal Act. In order to facilitate assessment of liability against coal mine operators, Section 422(I) prohibited the avoidance of such liability by coal mine operators through the mechanism of a post enactment transfer of assets...." S. Rep. 209 at 8.

14

from the denial of benefits due to the disappearance of any responsible operator. Here, because of the failure of the OWCP to identify the responsible operator "as soon after the filing of the claim as the evidence obtained permits," it is the claimant who will suffer unless the Trust Fund assumes responsibility for payment of the benefits. This result will protect the claimant, which is the purpose of the Act.

CONCLUSION

The Black Lung Benefits Act was enacted in order to ensure benefits for coal miners who have been totally disabled due to black lung disease as a result of their work in coal mines. Despite possessing accurate information regarding Venicassa's employment history, the Office of Worker's Compensation Programs failed to designate the proper responsible operator to defend the claim. As a result of this failure, the Benefits Review Board ruled that Venicassa had to relitigate his claim. We conclude, however, that the OWCP's failure to make a timely designation of the proper responsible operator should not have jeopardized the award of benefits which had been made to Venicassa. We will, therefore, grant the petition for review, vacate the decision of the Benefit's Review Board, and remand this case for reinstatement of the June 23, 1989, order and award of the Administrative Law Judge.

15

COWEN, Circuit Judge, dissenting.

Today the majority holds that a district director is not authorized, under any circumstances, to correct a mistaken responsible operator identification. Because this holding is contrary to, inter alia, the Director's reasonable interpretation of 20 C.F.R. S 725.412(a) and (c), congressional intent, and the Sixth Circuit's decisions in Caudill Construction Co. v. Abner, 878 F.2d 179 (6th Cir. 1989) and Director, OWCP v. Oglebay Norton Co., 877 F.2d 1300 (6th Cir. 1989), I must respectfully dissent.

I.

The standards governing our review of an agency's interpretation of its own regulations are well known and not in dispute. We owe "substantial deference" to the agency's interpretation, which has " `controlling weight unless it is plainly erroneous or inconsistent with the regulation.' " Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512, 114 S. Ct. 2381, 2386 (1994) (quoting Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 414, 65 S. Ct. 1215, 1217 (1945)); see also Sekula v. FDIC, 39 F.3d 448, 453 (3d Cir. 1994). Absent constitutional or statutory violations, the only circumstance in which we do not defer is where "an `alternative reading is compelled by the regulations's plain language or by other indications of the [agency's] intent at the time of the regulation's promulgation.' " Thomas Jefferson Univ., 512 U.S. at 512, 114 S. Ct. at 2386-87 (quoting Gardebring v. Jenkins, 485 U.S. 415, 430, 108 S. Ct. 1306, 1314 (1988)). "In addition, we give judicial deference to the Director, as policymaker, rather than to the Board, which is purely an adjudicator." Director, OWCP v. Eastern Coal Corp., 54 F.3d 141, 147 (3d Cir. 1995) (citations omitted). I believe that the majority fails to adhere to these fundamental principles. Indeed, the most striking aspect of the majority's opinion is its complete failure even to mention our duty, under most circumstances, to defer to an agency's interpretation of its own regulations.

II.

Section 725.412 provides, in pertinent part, as follows:

16

(a) At any time during the processing of a claim under this part, after sufficient evidence has been made available to the [district director], the[district director] may identify a coal miner [sic] operator (see S 725.491) which may be liable for payment of the claim. . . . Such identification shall be made as soon after the filing of the claim as the evidence obtained permits. . . .

. . . .

(c) If within one year after the final adjudication of a claim, the adjudication officer determines that an operator which may be liable for the payment of benefits has not been notified under this section, such adjudication officer shall give notice of possible liability and an opportunity to respond to such operator. The adjudication officer shall then take such further action on the claim as may be appropriate.

20 C.F.R. S 725.412(a), (c).

A. The Director's Interpretation

According to the Director, section 725.412 provides that: (1) a district director1 is authorized to correct mistaken responsible operator identifications; (2) such corrections may occur "at any time" during the processing of a claim, and up to one year after final adjudication; and (3) a district director has no duty--beyond the "at any time" limitation above--to identify a responsible operator within a reasonable time after the information necessary to make an identification becomes available to him. Each of these contentions will be addressed in turn.

1. Ability to Make Corrections

The Director asserts that section 725.412 "clearly authorizes the correction of a mistaken responsible

_____

1. A district director is a person authorized to develop and adjudicate claims for black lung benefits. For administrative purposes only, regulations substitute the term district director for the term deputy commissioner, which is found in the Longshore Act. See 20 C.F.R. S 725.101(a)(11).

17

operator identification . . . ." Respondent's Br. at 12. I agree. There is simply nothing in the regulation that is inconsistent with this interpretation. Nor does this interpretation conflict with any statutory or constitutional provisions. On the contrary, the Director's view effectuates clear congressional intent to limit Trust Fund liability to those instances in which no responsible operator can be identified. See 26 U.S.C. S 9501(d). Moreover, it is supported by two persuasive Sixth Circuit decisions. See Oglebay, 877 F.2d at 1305 (corrections permitted pursuant to section 725.412(a)); Caudill Const., 878 F.2d at 181 (corrections permitted pursuant to section 725.412(c)). Consequently, we must defer to the Director's reasonable interpretation.

### 2. Timing of Corrections

The Director next contends that section 725.412(a) and (c) authorize the district director or ALJ to correct a mistaken responsible operator identification "at any time" during the processing of a claim, and up to one year after a final adjudication. The Director also contends that the ability to make such corrections is not limited to cases—such as this one—where an attempt to correct a mistaken identification occurs prior to final adjudication of a claim.

Once again, the Director's interpretation is not inconsistent with the regulation. Moreover, it is not inconsistent with due process. Due process is simply not implicated when—as here—an attempt to correct a misidentification is made prior to final adjudication of the claim.2 Cf. Caudill Const., 878 F.2d at 181 (district director authorized to correct misidentification of responsible carrier "even where a final compensation order has been issued against the operator"). While it might seem unfair to require a claimant who has already proven entitlement once to have to prove it again, relitigation of a finally-decided claim

_____

2. Because a motion to remand was made prior tofinal adjudication of the merits in this case, we need not consider the Director's position that due process would not bar a district director's attempt to correct a mistaken responsible operator identification when that attempt is not made until after final adjudication.

18

is not unprecedented in the black lung program. The statutorily prescribed modification procedure, for example, allows a fact finder, upon any party's motion, to review previously-considered facts and find a "mistake in a determination of fact." 20 C.F.R. S 725.310. Indeed, the Supreme Court has observed that

> the "plain import of [the modification statute] was to vest a [district director] with broad discretion to correct mistakes of fact, whether demonstrated by wholly new evidence, cumulative evidence, or merely further reflection on the evidence initially submitted.

O'Keeffe v. Aerojet-General Shipyards, Inc., 404 U.S. 254, 256, 92 S. Ct. 405, 407 (1971) (per curiam). Thus, "the statute and regulations give the [district director] the authority, for one year after the final order on the claim, to simply rethink a prior finding of fact." Jessee v. Director, OWCP, 5 F.3d 723, 724-25 (4th Cir. 1993).

In addition, Venicassa had no expectation of finality in the ALJ's 1989 award of benefits. See id. ("[T]he principle of finality" just does not apply to Longshore Act and black lung claims as it does in ordinary lawsuits."). The Director appealed that decision to the Board, arguing not only that the ALJ had erroneously denied the remand motion, but that he had erred in awarding benefits.3 Venicassa had no reason, therefore, to believe that the ALJ's award settled the issue of his entitlement to benefits. His entitlement remained at issue regardless of the identity of the liable party. We must defer to the Director's interpretation of this regulation.

_____

3. By filing a motion to remand, and then renewing it at the hearing, the Director did everything within his control to correct the mistaken responsible operator identification before the ALJ awarded benefits payable by the Trust Fund. The Director could not order the ALJ to grant the motion, see Director, OWCP v. Newport News Shipbuilding and Dry Dock Co., 514 U.S. 122, 134, 115 S. Ct. 1278, 1287 (1995); Old Ben Coal Co. v. Luker, 826 F.2d 688, 696 n.4 (7th Cir. 1987), and an appeal to the Board at that point would have been interlocutory.

### 3. Duty to Identify as Soon as Evidence Permits

Finally, the Director asserts that it is inappropriate to mandate identification of a responsible operator within a reasonable time after the information necessary to make an identification becomes available to the district director. Such a reading, according to the Director, "essentially reads a time limitation into the regulation that `would inject a degree of uncertainty into future responsible operator identifications.' " Respondent's Br. at 30 (quoting Oglebay, 877 F.2d at 1303).

The Director's interpretation of this language is inconsistent with the regulation. While section 725.412(a) includes the phrase "at any time during the processing of the claim," it also includes the phrase "[s]uch identification shall be made as soon after the filing of the claim as the evidence obtained permits." Thus, the Director impermissibly reads the second phrase completely out of the regulation for all practical purposes. See Oglebay, 877 F.2d at 1306–07 (Wellford, J., dissenting). Because meaning must be given to every word "so that no part will be inoperative or superfluous, void or insignificant," Sekula, 39 F.3d at 454–55 n.16, this aspect of the Director's interpretation is entitled to no deference.

### 4. Conclusion

Based on the foregoing, I conclude that a district director is authorized to correct a mistaken responsible operator identification at any time prior to final adjudication of a claim. However, such corrections must be made within a reasonable time after the information necessary to make such a correction becomes available to him. Because the Director sought to correct the mistaken identification in this case approximately eighteen months before final adjudication of the claim, he acted within a reasonable time, and the ALJ should have granted his motion to remand. I would therefore affirm the Board's decision to vacate Venicassa's award so that the ALJ could designate the proper responsible operator.

## B. The Majority's Interpretation

According to the majority, section 725.412(a) must be interpreted as follows:

> While the regulation clearly states that the designation of the responsible operator may be made "at any time," the language of the regulation triggers the process by providing that the designation be made "after sufficient evidence has been made available to the deputy commissioner." The regulation then further limits the process by providing that the designation "shall be made as soon after the filing of the claim as evidence obtained permits." 20 C.F.R. S 725.412(a). The focus of the regulation is clearly on the swift and accurate designation of the responsible operator so that the claim may be resolved through the presentation of evidence to the fact finder by the appropriate parties.

Maj. Op. at 12.

While the majority properly concludes that section 725.412(a) requires the designation of a responsible operator as soon as the evidence reasonably permits, see Oglebay, 877 F.2d at 1306-07 (Wellford, J., dissenting), it fails to provide any mechanism for the correction of a mistaken responsible operator identification, regardless of how quickly and reasonably the attempted correction is made. See Maj. Op. at 10 ("The ALJ's decision [to deny the Director's motion to remand] places the incentives in the proper place--the Director should have gotten it right the first time. That would not have been an onerous task, because, from the outset, the OWCP had in its possession all the information necessary to name the proper responsible operator.") (emphasis added). This view is incorrect for several reasons.

First, the majority's interpretation is inconsistent with, and completely ignores, our obligation to defer to an agency's interpretation of its own regulations unless it is plainly erroneous or inconsistent with the regulation.4 Here,

_____

4. The majority expressly disavows reaching its conclusion on due process grounds. See Maj. Op. at 12 n.6. It does not, however, offer any reason why the Director's interpretation is not owed"substantial deference." Indeed, rather than defer to the Director's interpretation of its own agency guidelines, the majority defers to the Benefit Review

21

the Director reads section 725.412 to permit the correction of mistaken responsible operator identifications. Because this view is not "plainly erroneous or inconsistent with the regulation," see Caudill Const. Co., 878 F.2d at 181; Oglebay, 877 F.2d at 1305, it is entitled to substantial deference.

Second, the majority's conclusion that a district director is never authorized to correct a mistaken responsible operator identification fails to give any effect whatsoever to section 725.412(c). Such a reading violates our duty "to give each word of the [regulation] operative effect[,]" Smith v. Magras, 124 F.3d 457, 462 (3d Cir. 1997), and renders this provision "inoperative or superfluous, void or insignificant." Sekula, 39 F.3d at 454-55 n.16 (quotation marks omitted).

Third, the majority view is at odds with clear congressional intent, expressed over a period of years, to limit Trust Fund liability to instances in which no responsible operator can be identified. See  26 U.S.C. S 9501(d). In creating the Trust Fund, Congress intended to "ensure that individual coal operators rather than the trust fund bear the liability for claims arising out of such operator's mines to the maximum extent feasible." S. Rep. No. 95-209, 95th Cong., 1st Sess. 9 (1977), reprinted in House Comm. on Educ. and Labor, 96th Cong., Black Lung Benefits Reform Act and Black Lung Benefits Revenue Act of 1977, 612 (Comm. Print 1979); see also Old Ben Coal, 826 F.2d at 693.

_____

Board's interpretation of section 725.412 in Crabtree v. Bethlehem Steel Corp., 7 BLR 1-354 (1984). See id. at 11 ("In other words, the Crabtree concerns about due process and piecemeal litigation . . . are greater in the instant case than were those faced by the court in Oglebay."). Such deference, however, is improper for two reasons. First, "we give judicial deference to the Director, as policymaker, rather than to the Board, which is purely an adjudicator." Eastern Assoc. Coal Corp., 54 F.3d at 147 (citations omitted). Second, Crabtree was wrongly decided because it fails to provide for the correction of mistaken responsible operator identifications and improperly injects a requirement into the regulation that the responsible operator must be identified at a preliminary proceeding. Crabtree; 7 BLR at 1-357; see also Director, OWCP v. Trace Fork Coal Co., 67 F.3d 503, 508 (4th Cir. 1995) (requiring identification of a responsible operator at a preliminary proceeding).

22

Finally, the majority's interpretation also conflicts with the Sixth Circuit's decision in Oglebay, where at least two judges (and possibly a third5) concluded that section 725.412(a) authorizes the correction of a mistaken responsible operator identification.6  It is also at odds with Caudill Construction, where the Sixth Circuit observed that subsection (c) "permits notification of a new operator where investigation reveals that prior identification was mistaken." 878 F.2d at 181. Contrary to the majority's interpretation of the regulation, it is clear that section 725.412(a) and (c) both authorize the correction of mistaken responsible operator identifications.

I respectfully dissent.

A True Copy:
Teste:

Clerk of the United States Court of Appeals
for the Third Circuit

_____

5. Although Judge Wellford expressed concern in his Oglebay dissent with "giving the [district director] unfettered discretion to name a responsible operator at any time, virtually without limitation[,]" 877 F.2d
at 1306 (Wellford, J., dissenting), and with "encourag[ing] sloppy and unreasonable administration of the Act[,]" id. at 1307 (Wellford, J., dissenting), he did not consider whether section 725.412 authorized the correction of mistaken responsible operator identifications. It is interesting to note, however, that Judge Wellford joined the majority opinion in Caudill Construction, a case decided just seven days before Oglebay, which observed that section 725.412(c) "permits notification of a new operator where investigation reveals that prior identification was mistaken . . . ." 878 F.2d at 181.

6. The majority correctly observes that Oglebay is somewhat distinguishable from the instant case because correction of the mistaken responsible operator identification was made prior to final adjudication of the claim. However, this distinction is immaterial because, as noted above, relitigation of a finally-decided claim is: (1) consistent with the regulation; (2) consistent with congressional intent; (3) not uncommon in the black lung program; and (4) does not violate due process.

23