

1999 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-25-1999

# C & K Coal Co v. BRB

Precedential or Non-Precedential:

Docket 98-3151

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

Recommended Citation

"C & K Coal Co v. BRB" (1999). *1999 Decisions.* Paper 19.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/19

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed January 25, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 98-3151

C & K COAL COMPANY,
        Petitioner

v.

VIRGINIA TAYLOR, widow of William Taylor, LAMP COAL
COMPANY, OLD REPUBLIC INSURANCE COMPANY, and
DIRECTOR, OFFICE OF WORKERS' COMPENSATION
PROGRAMS, UNITED STATES DEPARTMENT OF LABOR,

ON APPEAL FROM A PETITION
FOR REVIEW OF A DECISION AND ORDER
OF THE BENEFITS REVIEW BOARD
DATED JANUARY 8, 1998
(BLA No. 95-1531)

Argued November 17, 1998

Before: McKEE, RENDELL, and WEIS, Circuit Judges.

Filed: January 25, 1999

        Martha A. Zeigler Eberhardt,
         Esquire (ARGUED)
        John B. Bechtol, Esquire
        Bechtol Lee & Eberhardt
        The Ewart Building, 2nd Floor
        925 Liberty Avenue
        Pittsburgh, PA 15222

        Attorney for Petitioner

Mark S. Flynn, Esquire (ARGUED)
 Director, Office of Workers'
 Compensation Programs
Marvin Krislov, Esquire
 Deputy Solicitor for National
 Operations
Allen H. Feldman, Esquire
 Associate Solicitor for Special
 Appellate and Supreme Court
 Litigation
Nathaniel Spiller, Esquire
 Deputy Associate Solicitor
United States Department of Labor
200 Constitution Avenue, N.W.
Room N-2700
Washington, D.C. 20210

Attorneys for Respondent Director,
Office of Workers' Compensation
Programs

Mark E. Solomons, Esquire
 (ARGUED)
Laura Metcoff Klaus, Esquire
Arter & Hadden, LLP
Suite 400K
1801 K Street, N.W.
Washington, D.C. 20006

Attorneys for Respondents Lamp
Coal Company and Old Republic
Insurance Company

OPINION OF THE COURT

WEIS, Circuit Judge.

The issue in this Petition for Review is whether the successor operator of a coal mine is responsible for payment of Black Lung benefits to a long-time employee of the mine who worked for the successor for only a few months. We conclude that, under the Black Lung Benefits

2

Act and implementing regulations, the successor operator, as opposed to the prior operator, is liable. We also decide that, despite inexcusable and prolonged delay in the administrative process, responsibility for payment should not be shifted to the Black Lung Disability Trust Fund under the circumstances presented here. Accordingly, we will deny the Petition for Review.

By Friday, August 23, 1974, William Taylor had worked as a coal miner for Lamp Coal Company ("Lamp") for approximately twenty-seven years. On that day, Lamp terminated all of its employees and sold its assets to Cambria Coal Company, a subsidiary of C & K Coal Company. Taylor returned to work the following Monday as a supervisor for C & K and he worked in that position until November 23, 1974 when he retired.

Taylor applied for Black Lung benefits in January 1975, listing Lamp as his most recent employer. The Office of Workers' Compensation Programs ("Office") preliminarily approved the application effective January 1, 1975 and notified Lamp that it was responsible for payment. Lamp objected, informing the Office that it was not Taylor's most recent employer.

Taylor's Social Security records confirmed that C & K was his last employer but the Office, unaware of the sale and potential successor liability, determined that C & K could not be responsible because Taylor had not worked for that employer for a year as required by regulation. Lamp then formally controverted the claim.

In September 1977, having learned of the sale of assets, the Office notified C & K that it was the responsible operator. C & K then controverted the claim. In November 1977, the Office acknowledged the objection but informed C & K of its right to have the miner examined and forwarded a copy of the evidence file. In January 1978, after development of additional uncertainty over the sale, the claim was remanded to the Office at the Director's request for a redetermination.

Pending designation of a responsible operator, Taylor received benefits from the Black Lung Disability Trust Fund. He died in May 1980, and his widow continued to

receive benefits from the Fund. One month after Taylor's death, the Office again designated C & K as the responsible operator. More questions arose, however, and after further consideration, in 1981 the Office pointed back at Lamp. This time, Lamp's insurer objected. Four more years passed before the Office concluded in 1986 that C & K, as Lamp's successor, was the responsible operator.

The matter was eventually assigned to an ALJ for a hearing in 1988. Both operators were named and appeared as potentially responsible parties. They convinced the ALJ that the lengthy procedural delay had violated their respective due process rights. The ALJ ultimately dismissed both C & K and Lamp and assigned liability to the Trust Fund.

The Director appealed to the Benefits Review Board. Five years later, in February 1993, the Board reversed and remanded to the ALJ with directions to consider both the widow's entitlement and C & K's liability. On August 25, 1995, the ALJ awarded benefits to the widow and held C & K responsible. The Board affirmed, both initially and upon reconsideration. This petition for review followed.

We review this final order of the Board pursuant to 33 U.S.C. S 921(c), as incorporated into the Black Lung Benefits Act, 30 U.S.C. S 932(a). Factual determinations by the Board will be upheld if supported by substantial evidence; questions of law receive plenary review. See 33 U.S.C. S 921(b)(3); Venicassa v. Consolidation Coal Co., 137 F.3d 197, 200 (3d Cir. 1998).

The widow's entitlement to benefits is not contested in this petition. Rather, the only question is the source of payment. C & K disputes its responsibility and contends alternatively that the extended administrative delay violated its due process rights.

I.

The Black Lung Benefits Act, 30 U.S.C. S 901 et seq., seeks to hold operators liable for the costs of pneumoconiosis. Because miners often shifted between employers and operators went out of business, became

4

insolvent or merged with others, industry realities necessitated some complex rules for identifying a responsible operator. The long latency period and complications associated with pneumoconiosis posed additional problems in terms of the equitable assignment of responsibility. Anticipating situations in which it would be impossible to trace or assess the responsible operator, Congress established the Trust Fund. See 26 U.S.C. S 9501. Financed by the coal industry, the Fund becomes a source of benefit payments only when a responsible operator cannot be identified, has gone out of business or is financially incapable of assuming liability. See 26 U.S.C. S 9501(d).

Liability generally attaches to the affected miner's most recent employer. Foreseeing problems attendant upon the transfer of mine ownership, however, Congress specified in 30 U.S.C. S 932(i)(1) that: "the operator of a coal mine who . . . acquired such mine or substantially all the assets thereof, from a . . . `prior operator' . . . shall be liable for . . . the payment of all benefits which would have been payable by the prior operator . . . with respect to miners previously employed by such prior operator as if the acquisition had not occurred and the prior operator had continued to be an operator of a coal mine." A more specific provision, aimed directly at the sale of mining assets, provides: "[i]f an operator ceases to exist by reason of a sale of substantially all his or her assets . . . the successor operator . . . shall be treated as the operator to whom this section applies." See 30 U.S.C. S 932(i)(3)(D).

Pursuant to statutory direction, the Secretary of Labor duly promulgated regulations to determine "whether pneumoconiosis arose out of employment in a particular coal mine or mines" and to identify the responsible operator. See 30 U.S.C. S 932(h); 20 C.F.R. SS 725.490 - 725.493. The regulation at issue, 20 C.F.R. S 725.493, designates as the responsible operator the employer with which the miner has the most recent period of cumulative employment of not less than one year. See 20 C.F.R. S 725.493(a)(1); see also Appendix for text of 20 C.F.R. S 725.493(a)(1), (a)(2)(i), (a)(2)(ii), (a)(4).

5

Echoing the Act, however, the paragraph immediately following provides that the successor operator "shall be liable for . . . benefits which would have been payable by the prior operator with respect to miners previously employed by such prior operator as if the acquisition had not occurred and the prior operator had continued to be a coal mine operator." See 20 C.F.R. S 725.493(a)(2)(i); see also 30 U.S.C. S 932(i)(1). The one-year minimum employment rule is expressly made "[s]ubject to" the provisions of this paragraph. See 20 C.F.R. S 725.493(a)(1) ("Subject to the provisions of paragraph[ ] (a)(2)"). Moreover, as the more specific provision, paragraph (a)(2), by its placement and content, operates as an exception to the one-year minimum employment rule. Thus, the successor situation, expressly covered by paragraph (a)(2)(i), is not governed by the rule set forth in paragraph (a)(1), i.e., the minimum employment rule.

In addition to these specific successor operator rules, the Act and regulations establish a framework for determining which, as between the prior and successor operator, is "primarily liable" for the payment of benefits. See 30 U.S.C. S 932(i)(2); 20 C.F.R. S 725.493(a)(2)(ii). Noting that Congress sought to prevent an operator from circumventing responsibility by entering into corporate or other business transactions which "make the assessment of liability against that operator a financial or legal impossibility," subsection (a)(2)(ii) of the regulation provides that a "prior operator . . . shall remain primarily liable for the payment of benefits under this part predicated on employment with the prior operator" if it is able to assume financial responsibility through insurance or otherwise. See 20 C.F.R. S 725.493(a)(2)(ii); see also 30 U.S.C. S 932(i)(2).

Applying these statutory and regulatory provisions, we must determine whether Lamp, as the prior operator, or C & K, as the successor operator, is responsible. The Director, seeking to uphold assignment of liability to C & K, contends that under the regulations, because it employed Taylor, albeit for less than a year, C & K is primarily liable as the successor. Lamp, in agreement with the Director, maintains that employment by a successor operator overrides application of the one-year minimum employment

6

rule. Old Republic, Lamp's insurer, adopts its insured's interpretation of the regulation.

C & K attacks the ALJ finding that Lamp ceased doing business upon sale of its assets and, on that basis, argues that Lamp remains primarily liable. In addition, C & K contends that even if it is a successor, it is not responsible because it employed Taylor for less than one year. Finally, should we agree that it is responsible, C & K asserts that Lamp had agreed to indemnify it against any claims existing at the time of the sale.

We are persuaded that the Director's position is correct. In looking first, of course, to the statute, we observe that the Act clearly specifies that the successor operator is responsible for benefits which "would have been payable" by the prior operator for miners previously employed by the prior operator as if the prior operator had continued to operate the mine. See 30 U.S.C. S 932(i)(1). There is no dispute that Taylor previously worked for Lamp and was later employed by C & K following the change of ownership. Section 932(i)(1), read in isolation, unmistakably contemplates assigning responsibility to C & K.

The paragraph immediately following, however, complicates matters because it states that "nothing in [subsection 932(i)] shall relieve any prior operator of any liability under this section." See 30 U.S.C. S 932(i)(2). Together, these provisions of the Act might be read to pose a contradiction between assigning liability to the successor under (i)(1), yet specifically retaining liability in the prior operator under (i)(2).

The Secretary's regulation, however, eliminates any apparent inconsistency. Under 20 C.F.R. S 725.493(a)(2)(ii), the successor becomes responsible for miners previously employed by the prior operator once they are hired by the successor following the change in ownership. If, however, the miner did not work for the successor, the prior operator remains primarily liable. In that situation, primary liability only shifts to the successor if the prior operator is financially incapable of assuming payments. See 20 C.F.R. S 725.493(a)(2)(ii).

7

Translated into the circumstances of this case, because Taylor worked for Lamp and continued to work in the mine after C & K's subsidiary took it over, C & K becomes primarily liable. In other words, once C & K purchased Lamp's assets, thereby becoming Lamp's successor, it was as if Taylor had worked for C & K twenty-seven years and three months. Only if C & K could not otherwise assume liability would Lamp remain primarily liable. See 20 C.F.R. S 725.493(a)(2)(iii).

That Taylor worked for C & K for less than a year does not alter the outcome. The regulation's one-year minimum employment rule is specifically made subject to the special rule for successors. See 20 C.F.R. S 725.493(a)(1), (a)(2)(i). Moreover, the one-year rule is not contained in the Act, which, to the contrary, dictates a special rule for successors. See 30 U.S.C. S 932(i)(1), (i)(3)(D). We agree with the Director's interpretation of the regulation, one that does not conflict with the Act, and therefore hold that C & K is primarily liable.

We reject, as based on an erroneous reading of the Act, C & K's argument that if indeed Lamp continued as a viable entity following the sale of substantially all of its mining assets, Lamp remains primarily liable. Neither the basic successor rule, 30 U.S.C. S 932(i)(1), nor its more specific formulation, 30 U.S.C. S 932(i)(3)(D), require total cessation of the prior operator's business before the successor becomes potentially liable. In this situation, both operators were potentially liable; the question was whether there existed any basis for assigning primary liability to C & K.

We must also deny C & K's plea to apportion liability. We do this despite the intrinsic appeal of allocating liability to reflect the fact that Taylor had worked for Lamp for 27 years and for C & K only three months.

The Act authorized the Secretary to "establish[by regulation] standards for apportioning liability for benefits." 30 U.S.C. S 932(h). The Secretary proposed an apportionment-based regulation in 1972, but withdrew it amidst adverse comment. See 37 Fed. Reg. 18,167-68 (Sept. 7, 1972). Apportionment would have introduced a substantial degree of complexity and it appeared that fixed

8

guidelines would better serve the mining industry. We note a ready analogy in the commercial field where it is recognized that arbitrary rules known in advance, even if inequitable in some specific instances, are on the whole necessary for the efficient conduct of business. Accordingly, in the absence of a regulation permitting apportionment, C & K must bear the full burden of payment.

II.

Should it be the responsible operator, C & K argues vigorously that the administrative delay has denied it due process. The remedy, C & K urges, is a total transfer of liability to the Trust Fund.

It appears that the Office was aware as early as 1977 of the uncertainty surrounding the responsible operator issue. As noted earlier, however, eleven years of wrangling passed before all potential parties appeared before an ALJ for a basic evidentiary hearing.

In one of the appeals to the Board, the Director did not file his brief for two years beyond the time set by the Board's rules. See 20 C.F.R. SS 802.210-802.217. In a subsequent appeal, the Director was again delinquent and again the Board did not enforce its rules. The Board's ultimate decision, upon reconsideration, to affirm was not docketed until January 8, 1998.

Thus, more than 23 years elapsed from the initial application to the date of the responsible operator determination. Fortunately for the Taylors, interim payments have been made from the Trust Fund.

Although we recognize that inadequate information initially hampered the Office's ability to grasp the relationship among Taylor, Lamp and C & K, we are appalled that this relatively straightforward issue bounced three times between the Office and an ALJ, accompanied by unnecessary delays. Similarly, we cannot ignore that the Board compounded the delay by permitting the Director to flout its rules that set time limits for filing briefs.

Unfortunately, as we have observed in the past, such "dismaying inefficiency" has long characterized the

administration of this Act. See, e.g. , Venicassa, 137 F.3d at 198 & n.2 (12 years delay compounded by error of the Office); Lango v. Director, OWCP, 104 F.2d 573 (3d Cir. 1997) (benefits awarded after 14 years); see also Amax Coal Co. v. Franklin, 957 F.2d 355, 356 (7th Cir. 1992) ("As so often in black lung cases, the processing of th[is] claim has been protracted scandalously . . . ."). We publicized our dismay in Lango, hoping to bring the Act's poor administration "to the attention of authorities who can do something about it." 104 F.3d at 576.

The tortured route that this matter took towards resolution simply cannot be justified. Counsel for the current Director, with admirable candor, did not try to do so at oral argument. Rather, he assured us that steps have been taken in the last few years to ensure that Black Lung claims are expeditiously resolved. Statistics reveal that the number and age of pending Black Lung cases has, indeed, steadily decreased. We cannot hope but that this trend continues. Recent progress, however, is of little consolation to C & K and we must consider its due process challenge under the deplorable circumstances here.

In large part, we view the proposed remedy for the asserted due process challenge violation through our perception of the Trust Fund's purpose and nature. Congress intended operators to bear the costs of pneumoconiosis whenever feasible. See S. Rep. No. 95-209, at 9 (1977), reprinted in House Comm. on Educ. and Labor, 96th Cong., Black Lung Benefits Reform Act and Black Lung Benefits Revenue Act of 1977, 612 (Comm. Print 1979); see also Director, OWCP v. Oglebay Norton Co., 877 F.2d 1300, 1304-05 (6th Cir. 1989). The Trust Fund exists as a fail-safe mechanism and it is not a creature of the Department of Labor, the Office or the Board. See 26 U.S.C. S 9501.

Given the dismal history of the Act's administration, it is not hard to envision how quickly a policy of liberal transfer of claims to the Fund would deplete its resources. Such a remedy, it is generally held, should only be invoked where prejudice other than mere delay has been demonstrated. For example, in Venicassa, we found that the claimant, forced to litigate his entitlement to benefits twice, had been

10

prejudiced by the ten-year delay and improper designation of the responsible operator. See 137 F.3d at 202-03. In those circumstances, rather than allow the litigation to drag on, we concluded that the Trust Fund should assume liability. See id. at 203-04.

In Lane Hollow Coal Co. v. Director, OWCP, 137 F.3d 799 (4th Cir. 1998), the alleged responsible operator was notified 17 years after notice could have been given and three years after the claimant died. The Court of Appeals for the Fourth Circuit concluded that because the inexcusable delay resulted in the loss of an opportunity to mount a proper defense, the operator had been denied due process. See id. at 808. In light of the substantial prejudice shown, payments were assigned to the Trust Fund. See id.

Oglebay dealt with a similar delay for which an ALJ had seen fit to transfer liability to the Trust Fund. See 877 F.2d at 1302. The Court of Appeals for the Sixth Circuit disagreed with that drastic approach, because "none of the parties . . . would suffer substantial prejudice by a further remand." Id. at 1304. The claimant had been receiving interim benefits from the Trust Fund and the operator had access to substantial medical evidence sufficient to provide an adequate defense on remand. See id. Oglebay simply did not involve prejudice comparable to that encountered in Venicassa and Lane Hollow.

The case before us is similar to Oglebay. C & K was notified in 1977 that its status as a responsible operator was under consideration. Thus, it had three years to procure appropriate medical evidence before Taylor died. On this record, we see no prejudice other than that attendant on the failure to confirm the liability that had been asserted years earlier. C & K makes some vague reference to harm in connection with contractual rights it may have had to indemnification from Lamp, but, as that position is not clearly articulated, we do not find it persuasive.

Accordingly, we will not hold that this delay, albeit inexcusable, ipso facto establishes a violation of C & K's due process rights. The fact that the delay cannot be attributed to the Trust Fund is an important additional

11

factor. Foisting liability on the Trust Fund where no demonstrable prejudice has occurred would run counter to Congressional intent by effectively shifting responsibility for the Office's and the Board's failings onto contributing operators. We will not take that action when there is an operator legally responsible and financially capable of assuming payments.

We conclude that C & K is the legally responsible operator and that, while the delay present in this case cannot be condoned, neither its occurrence nor its consequences should be visited upon an innocent party, the Trust Fund.

Accordingly, the petition for review will be denied.

APPENDIX

20 C.F.R. S 725.493 (1998). Criteria for identifying a responsible operator.

(a)(1) Subject to the provisions of paragraphs (a)(2) and (3) of this section, and provided that the conditions of S 725.492(a)(2) through (a)(4) are met, the operator or other employer with which the miner had the most recent periods of cumulative employment of not less than 1 year, as determined in accordance with paragraph (b) of this section, shall be the responsible operator.

(2)(i) Except as otherwise provided in this paragraph, if the operator described in paragraph (a)(1) of this section was an operator of a mine or mines or the owner of the assets thereof on or after January 1, 1970, (a "prior operator") and on or after January 1, 1970, transferred such mine or mines or substantially all of the assets thereof to another operator (a "successor operator"), such successor operator shall be liable for and shall secure the payment of all benefits which would have been payable by the prior operator with respect to miners previously employed by such prior operator as if the acquisition had not occurred and the prior operator had continued to be a coal mine operator. A lessor of a coal mine may be considered a prior or successor operator in accordance with this subpart.

12

(ii) The stated congressional objective supporting section 422(i) of the Act is to prevent a coal operator from circumventing liability under this part by entering into corporate or other business transactions which make the assessment of liability against that operator afinancial or legal impossibility. Accordingly, a prior operator under paragraph (a)(2)(i) of this section, which transfers a mine or mines or substantially all the assets thereof, shall remain primarily liable for the payment of benefits under this part predicated on employment with the prior operator if such prior operator meets the conditions of S 725.492(a)(2) and (a)(4). If the conditions in S 725.492(a)(2) and (a)(4) are not met, the successor operator shall, if appropriate, be liable for the payment of such benefits.

. . . .

(4) If there is no operator which meets the conditions of paragraphs (a)(1) or (2) of this section, the responsible operator shall be considered to be the operator with which the miner had the latest periods of cumulative employment of not less than 1 year, subject to the provisions of paragraph (a)(2) of this section and provided that the conditions of S 725.492(a)(2)-(a)(4) are met.

. . . .

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

13